## EX PARTE MURRAY JACKSON.

### No. 3990. Decided May 10, 1923.

### (252 S. W., 149).

#### 1.—Jurisdiction of Supreme Court—Habeas Corpus.

The Supreme Court has no power to issue the writ of *habeas corpus* except that conferred by Art. 1529, Revised Statutes; and this is limited to the case of one restrained in his liberty by commitment of a court on account of his violation of its order made in any civil cause. It cannot issue the writ where the restraint is for violation of an order made in a criminal proceeding, as in the case of commitment of a witness for refusing to testify therein before a grand jury investigating criminal charges. (Pp. 59, 60).

#### 2.—Same—Constitutional Law.

Article 5. Section 3, of the Constitution expressly makes the jurisdiction of the Supreme Court to issue writs of *habeas corpus* subject to legislative control. The general power to issue that writ is conferred on the Court of Criminal Appeals. The Supreme Court has concurrent jurisdiction only in case the statute authorize it, and this is given it only by Art. 1529, and limited by its terms. (Pp. 60-62).

Original application to the Supreme Court by Murray Jackson for writ of habeas corpus.

*Wood & Wood, W. C. Wofford,* and *Lewellyn Duke,* for applicant.

*Dan Moody,* District Attorney,*Critz & Lawhon, Wilcox & Graves, J. F. Taulbee,* and *W. H. Nunn,* for the State.

Mr. Chief Justice CURETON delivered the opinion of the court.

The relator is confined in the jail of Williamson County under a commitment issued out of the Criminal District Court of that county. Prior to commitment he had been called as a witness before the Grand Jury, which was engaged in investigating criminal charges against certain persons. He declined to testify before the Grand Jury, and was brought before the District Court. He persisted in his refusal to testify, and the court adjudged him guilty of contempt, fixed his punishment at a fine of $100, and committed him to the custody of the sheriff of Williamson until he should pay the fine, and until "he shall have fully and truthfully answered the questions" propounded to him. Upon the order of the court a commit· ment issued, and relator is confined in jail by virtue thereof.

We are asked to issue a writ of habeas corpus, admit the relator to bail, and upon final hearing to discharge him from confinement.

We have concluded that we have no jurisdiction to issue the writ of habeas corpus in this case, and therefore can not inquire into the legality of relator's confinement.

The jurisdiction of this Court to grant writs of habeas corpus is defined in Revised Statutes, Article 1529, which confers power upon this Court "to issue writs of habeas corpus in all cases where any person is restrained in his liberty by virtue of any order, process or commitment, issued by any court or judge, on account of the violation of any order, judgment or decree, theretofore made, rendered or entered by such court or judge in any civil cause." It is· by virtue of this statute that this Court issues writs of habeas corpus. Ex Parte Lipscomb, 111 Texas, 409, 417, 239 S. W., 1101; Ex Parte Lytle, 99 Texas, 405, 406, 89 S. W., 956.

It appears therefrom that our jurisdiction to issue the writ is limited to those instances where the confinement is by virtue of an order, process, or commitment issued on account of the violation of some order, judgment, or decree entered by a court or judge in the trial of a *civil case.* We have no general jurisdiction to grant the writ, as has the Court of Criminal Appeals, for the reason that this statute limits our power in the language just stated,—that is, we may inquire only into the restraint brought about by an order or process of the court issued because of the violation of some order,

judgment, or decree in a *civil case.* Ex Parte Zuccaro, 72 Texas Crim., 214, 162 S. W., 844, 846; Ex Parte Alderete, 83 Texas Crim., 358, 203 S. W., 763; Ex Parte Duncan, 78 Texas Crim., 447, 2 A. L. R., 222, 182 S. W., 313; State v. Clark, 79 Texas Crim., 559, 187 S. W., 760, 766.

Duncan's case illustrates the limited jurisdiction of this Court. The Hon. John T. Duncan was attorney in a certain civil case tried in the District Court of the Twenty-second District. The case was appealed, and Judge Duncan filed a brief for one of the parties. Objection was made to a portion of the language used in this brief, and for which the trial court held him in contempt. He thereupon applied to this Court for a writ of habeas corpus, which was refused without a written opinion. One of the judges, however, endorsed on the application that this Court declined to issue the writ for lack of jurisdiction. (78 Texas Crim., 447, 182 S. W., 313). It is apparent that Judge Duncan was held in contempt by the trial court, not for violating any order made by the court in a civil case, but because of certain language used in a brief filed in the case. From this statement it appears that, although the alleged contempt arose out of a civil case, yet, since it did not arise by reason of a violation of the court's order, the Supreme Court declined to take jurisdiction. The Court of Criminal Appeals, as shown by the report of the case, did take jurisdiction, and discharged the relator.

In Ex Parte, Alderete, cited above, Presiding Judge Morrow of the Court of Criminal Appeals, after referring to the statutes giving that court jurisdiction, and the constitutional provision relating to this Court, correctly states the rule as to the jurisdiction of this Court as follows:

"The effect of these constitutional and statutory provisions, as the writer understands them, is that the Court of Criminal Appeals is vested with authority to issue writs of habeas corpus in all cases where a person is illegally restrained of his liberty, and that the act of the Legislature vesting in the Supreme Court authority to issue such writs where restraint grows out of a civil case gives the Supreme Court concurrent jurisdiction with the Court of Criminal Appeals in such cases."

Since relator's imprisonment grows out of his refusal to testify before the Grand Jury while it was investigating criminal charges, it necessarily follows that he was not adjudged guilty of contempt for violating an order of the court in a civil case, and that, therefore, this Court has no jurisdiction to consider his application for habeas corpus.

The insistence is made, however, that we have power to grant the writ under the Common Law; that since the Supreme Court is a constitutional one, with general jurisdiction, it has authority to issue

a writ of habeas corpus, notwithstanding the limitations of the statute. There is no merit in this contention. The Constitution, Section 3 of Article 5, expressly makes the jurisdiction of this Court to issue writs of habeas corpus subject to legislative limitation. This Section, in so far as here applicable, reads:

"The Supreme Court and the justices thereof shall have power to issue writs of habeas corpus *as may be prescribed by law.*"

It is thus seen that in this respect the jurisdiction of this Court is made subject to legislative control; and it is elementary that in such instances the Constitution prevails over and supplants the Common Law. Cooley's Const. Lim., 5th Ed., p. 73. It is a familiar practice to limit the ·jurisdiction of appellate courts to issue writs of habeas corpus. 29 Corpus Juris, pp. 117, 118.

The history of the subject in this State shows quite definitely that the constitutional purpose was to make the jurisdiction of this Court to grant writs of habeas corpus subject to legislative limitation. Under the Constitutions of 1845, 1861, 1866, and 1869 the Supreme Court had power to issue writs of habeas corpus in all cases, the language of the several Constitutions mentioned being general, and substantially to the effect that "the Supreme Court and the judges thereof shall have power to issue the writ of habeas corpus." San Antonio .& Aransas Pass Ry. Co. v. Blair, 108 Texas, 434, 469, 196 S. W., 502, 1153, 1163; Batts' Ann. Civil Stat. (1895), Vol. 1, p. 262. However, by the Constitution of 1876 jurisdiction over criminal cases was taken from the Supreme Court and confided to the Court of Appeals; the provision of previous constitutions conferring power upon the Supreme Court to issue writs of habeas corpus was omitted, and that power, in language broad and general, was conferred upon the Court of Appeals. Harris' Const., pp. 361, 373.

After the adoption of the Constitution of 1876, and prior to the Amendment of 1891, we have found no instance where the Supreme Court issued a writ of habeas corpus.

The Court of Criminal Appeals in the case of Childers v. State, 30 Texas Crim., 160, 28 Am. St., 899, 16 S. W., 903, 905, referring to the power of the Supreme Court under the Constitution of 1876, stated that the judges of this Court could not issue the writ of habeas corpus.

It is clear then, we believe, that prior to the adoption of the Constitution of 1876 this Court had general authority to issue writs of habeas corpus; while after the adoption of that Constitution, we had no power to issue, and did not issue, such writs.

However, in 1891, Section 3 of Article 5 of the Constitution was amended, and authority was conferred upon this Court to issue writs of habeas ,corpus in such instances "as may be prescribed by law"; although the Legislature did not enact the statute under which we

now issue writs of habeas corpus until 1905. Vernon's Complete Texas Statutes, Art. 1529.

It is clear, therefore, that the language of the Constitution subjecting our jurisdiction to issue writs of habeas corpus to legislative control was not unintentionally or carelessly used, but arose out of experience under the various Constitutions heretofore named by us, and it must be given effect. That we have no power to issue the writ of habeas corpus in this case does not admit of doubt.

The application of relator is dismissed.