Justice GUZMAN
delivered the opinion of the Court,
joined by Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice LEHRMANN.
It is well-rooted in our jurisprudence that contempt is a broad and inherent power of a court. But, we have also recognized that despite the breadth and necessity of that power, it is a power that must be exercised with caution. Today, we decide as a matter of first impression whether a trial court may hold a litigant in contempt for perjury committed during a deposition. We are further presented with a question arising from the bifurcated nature of the Texas judiciary and our limited habeas jurisdiction: whether we should exercise our mandamus jurisdiction to provide a forum for a civil litigant who is deprived of liberty pursuant to a court’s contempt order, and the Court of Criminal Appeals has declined to exercise its habeas jurisdiction.
In the underlying civil case, the relator was held in contempt and confined for perjuring himself during a deposition. *363 The relator challenged his confinement by seeking a writ of habeas corpus in the Court of Criminal Appeals, but that court declined to exercise its jurisdiction citing, among other things, the civil nature of the case. The Court of Criminal Appeals directed the relator to pursue his remedies in this Court. Because we lack habeas jurisdiction in this case, the relator pursued relief by filing the instant petition for writ of mandamus to challenge his confinement.
We conclude the trial court abused its discretion by holding the relator in contempt for perjury occurring during a deposition, because such perjury did not obstruct the operation of the court. Further, because the underlying suit is civil in nature, and the Court of Criminal Appeals declined to grant the relator leave to file a habeas petition in that court, we hold the relator has no adequate remedy by appeal and therefore mandamus is the appropriate remedy to correct the trial court’s abuse of discretion. We conditionally grant relief.
I. Background
The trial court found relator Coy Reece in contempt for perjuring himself during a 2008 deposition in the underlying civil suit brought by real party in interest SB International, Inc. (SB). Specifically, during the deposition, Reece denied knowledge of a codefendant’s transactions in violation of a contract with SB,[1] but later admitted to deliberately making misstatements in the deposition.
After Reece’s admission, SB filed a motion for sanctions, requesting costs and fees incurred in connection with its efforts to obtain Reece’s compliance with discovery obligations, totaling $58,331.17.[2] SB secured a hearing on the motion for sanctions, but the trial court suspended the hearing and issued a show cause order to determine if Reece had committed criminal contempt. At the contempt hearing, Reece testified he had lied under oath during the deposition. On May 29, 2009, the court found beyond a reasonable doubt that Reece was guilty of “repeatedly, deliberately, and intentionally [lying] under oath” and that his lying under oath “was reasonably calculated to impede, embarrass, and/or obstruct the court in the discharge of its duties.” The trial court found Reece in contempt and sentenced him to sixty-days confinement, with all but two weeks of the sentence suspended.
Reece filed a petition for writ of habeas corpus with the court of appeals, which granted his request for emergency relief, but that court later dismissed the habeas petition for want of jurisdiction.[3] Reece then sought habeas relief from the Court of Criminal Appeals, which denied his initial petition because he was not in custody. On June 24, 2009, after the trial court entered a revised commitment order and Reece was taken back into custody, Reece filed another habeas petition with the *364 Court of Criminal Appeals. The Court of Criminal Appeals issued an order denying leave to file the habeas petition without prejudice, explaining that (1) the underlying case is civil in nature, (2) the Texas Supreme Court thus has jurisdiction to entertain Reece’s petition, and (3) although the Court of Criminal Appeals possesses jurisdiction to act on Reece’s petition, it declines to do so in order for Reece to pursue his remedies in the Texas Supreme Court. In re Reece, No. WR-72,199-02, slip op. at 2 (Tex.Crim.App. June 24, 2009) (per curiam) (not designated for publication) (order denying leave to file for habe-as relief).
Reece filed a motion for reconsideration in the Court of Criminal Appeals, explaining that this Court lacks habeas jurisdiction because the contempt order does not emanate from a violation of an order, judgment, or decree. See Tex. Gov’t Code § 22.002(e). Reece also filed the instant mandamus petition with this Court.[4] In his mandamus petition, Reece argues that (1) the show cause order is deficient and does not afford him due process, (2) even if the show cause order is not deficient, perjury committed during a deposition is not punishable by contempt, and (3) this Court possesses mandamus jurisdiction to review a contempt judgment involving confinement in a civil case when the Court of Criminal Appeals refuses to exercise its habeas jurisdiction. We granted Reece’s motion for temporary relief and ordered him released on bond; he has served four days of his fourteen-day sentence.
To be entitled to mandamus relief, a relator must demonstrate (1) the trial court clearly abused its discretion, and (2) the relator has no adequate remedy by appeal. In re McAllen Med. Ctr., Inc., 275 S.W.3d 458, 462 (Tex.2008) (orig. proceeding). We begin by considering the first prong in our mandamus inquiry: whether the trial court clearly abused its discretion by holding Reece in contempt.
II. Clear Abuse of Discretion
The crux of Reece’s arguments rests on his assertion that perjury committed during a deposition is not punishable by contempt, and therefore the trial court clearly abused its discretion by holding him in contempt for this conduct. In evaluating the merits of this assertion, we first examine the general contours of a court’s contempt power in Texas and then decide whether the specific misconduct at issue in this case is punishable by contempt.
A. Contempt of Court in Texas
We have broadly defined contempt as “disobedience to or disrespect of a court by acting in opposition to its authority,” Ex parte Chambers, 898 S.W.2d 257, 259 (Tex.1995) (orig. proceeding), and observed that contempt is a broad and inherent power of a court, see Ex parte Browne, 543 S.W.2d 82, 86 (Tex.1976) (orig. proceeding). But, despite the breadth of a court’s contempt power, we have warned it is a tool that should be exercised with caution. Herring v. Houston Nat’l Exch. Bank, 113 Tex. 337, 255 S.W. 1097, 1104 (1923) (orig. proceeding); accord Ex parte Taylor, 807 S.W.2d 746, 748 (Tex.Crim.App.1991). As the Court of Criminal Appeals has explained, “[cjontempt is strong medicine”— the alleged contemnor’s very liberty is often at stake — and so it should be used “only as a last resort.” Ex parte Pink, 746 S.W.2d 758, 762 (Tex.Crim.App.1988) (citing Willson v. Johnston, 404 S.W.2d 870, 873 (Tex.Civ.App. — Amarillo 1966, orig. proceeding)).
*365 Contempt may occur in the presence of a court (direct contempt), or outside the court’s presence (constructive contempt). Ex parte Gordon, 584 S.W.2d 686, 688 (Tex.1979) (orig. proceeding). In direct contempt cases, the court must have direct knowledge of the behavior constituting contempt, In re Bell, 894 S.W.2d 119, 127 (Tex.Spec.Ct.Rev.1995), while the converse is true in a case of constructive contempt. As a result of this distinction, the trial court in a direct contempt proceeding is entitled, in some instances, to conduct a summary proceeding in which the alleged contemnor is not entitled to notice and a hearing, id,[5] while a constructive contemnor is always entitled to notice and a hearing in order to defend or explain the charges, see Ex parte Gordon, 584 S.W.2d at 688; Ex parte Werblud, 536 S.W.2d 542, 546 (Tex.1976) (orig. proceeding) (observing -that constructive contempt entitles the contemnor to more procedural safeguards than those afforded to direct contemnors); see also Ex parte Krupps, 712 S.W.2d 144, 147 (Tex.Crim.App.1986) (explaining that constructive contempt adjudications satisfy due process if the con-temnor is given notice, a hearing, and the opportunity to obtain an attorney).
Contempt is further classified into either civil or criminal contempt. In determining whether contempt is civil or criminal, it is necessary to examine the purpose behind the contempt order: civil contempt is “remedial and coercive in nature” — the contemnor carries the keys to the jail cell in his or her pocket since the confinement is conditioned on obedience with the court’s order, Ex parte Werblud, 536 S.W.2d at 545,[6] while criminal contempt is punitive in nature — “the contem-nor is being punished for some completed act which affronted the dignity and authority of the court,” id. Thus, the distinction between criminal and civil contempt does not turn on whether the underlying litigation is civil or criminal, but rather on the nature of the court’s punishment. Ex parte Chambers, 898 S.W.2d at 266 (Gonzalez, J., dissenting); see generally Ex parte Werblud, 536 S.W.2d at 545-46.
Here, Reece has admitted to lying outside the trial court’s presence during a deposition, and the purpose of the contempt judgment was to punish him for this misdeed rather than to coerce him into complying with an order. The trial court therefore held Reece in constructive criminal contempt.
Reece first asserts that a court’s constructive contempt power is limited to situations in which a person violates a court’s order, and thus Reece cannot be held in contempt here because he did not violate any order. We disagree with this overly narrow definition. While our case law suggests constructive contempt generally arises from the violation of a court order,[7] there are situations where a party *366 or attorney to a suit could engage in behavior that may warrant a judgment of constructive contempt. For example, in Ex parte Privitt, a criminal defendant was found in contempt for attempting to bribe prospective jurors. 127 Tex.Crim. 475, 77 S.W.2d 663, 664 (1934); see also Ex parte Gordon, 584 S.W.2d at 688 (“Constructive contempt ... is contemptuous conduct outside the presence of the court, such as the failure or refusal to comply with a valid court order”) (emphasis added); Ex parte Murphy, 669 S.W.2d 320, 321 (Tex.Crim.App.1983) (affirming judgment holding attorney in constructive contempt for failing to attend hearing and trial).[8] We decline Reece’s invitation to limit the boundaries of a court’s constructive contempt power in the manner he proposes.
Reece next argues that, even if constructive contempt is not limited to violations of court orders, it is at least confined to acts that obstruct, impede, or embarrass the court in the discharge of its duties. SB responds that although obstruction is a necessary element of contempt under federal law, it is not under Texas law.
At the outset, we acknowledge that federal statutory contempt standards are more stringent than Texas statutory standards. Under federal law, a court has discretion to punish for contempt only to the extent that a contemnor (1) engages in misbehavior in or near the court’s presence so as to obstruct the administration of justice, (2) in the case of a court officer, engages in misbehavior during official transactions, or (3) disobeys or resists a court order. 18 U.S.C. § 401. In Texas, however, the statutory guidance is more sparse. Section 21.002 of the Government Code sets forth the only statutory framework for contempt, broadly providing that a “court may punish for contempt.” Tex. Gov’t Code § 21.002(a).[9] Any restrictions on this authority are found in the common law.
Contrary to SB’s assertion, however, it is firmly established in our common law that a court’s ability to punish for contempt is not unfettered. Rather, an act must impede, embarrass, or obstruct the court in the discharge of its duties in order to constitute constructive contempt.[10] See Ex parte Norton, 144 Tex. 445, 191 S.W.2d 713, 714 (1946) (orig. proceeding); Ex parte Krupps, 712 S.W.2d at *367 149; In re Bell, 894 S.W.2d at 127. “The essence of contempt is the contemn[o]r’s conduct obstructs or tends to obstruct the proper administration of justice.” Lee v. State, 799 S.W.2d 750, 752 (Tex.Crim.App.1990); see Ex parte Gibson, 811 S.W.2d 594, 596 (Tex.Crim.App.1991) (per curiam) (setting aside a judgment for contempt arising from an attorney sending an angry letter to the court of appeals because this act did not disrupt the court in the performance of its duties).[11] Because conduct must additionally obstruct the court in the performance of its duties to constitute constructive contempt, we turn to whether a litigant’s misstatements during a deposition amount to such an obstruction.
B. Perjury as Grounds for Contempt
This Court has not had occasion to determine whether perjury in a deposition obstructs a court’s performance and thus constitutes contempt. Federal law includes obstruction as an element of contempt and is therefore instructive in our analysis.
It is axiomatic under federal law that perjury alone is not a ground for contempt unless the conduct also obstructs the court in the performance of its duties. See In re Michael, 326 U.S. 224, 228, 66 S.Ct. 78, 90 L.Ed. 30 (1945) (concluding that perjury alone does not constitute an obstruction justifying the exertion of a court’s contempt power); Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919) (same); Matusow v. United States, 229 F.2d 335, 341 (5th Cir.1956) (“It is well settled that proof of perjury alone will not sustain a conviction for contempt, but misbehavior constituting obstruction of the court must also be established.”). Because a person’s conduct must obstruct a court in the performance of its duties to constitute constructive contempt, we hold that perjury committed during a deposition does not alone constitute constructive contempt. To constitute constructive contempt, such perjury must actually obstruct a court in the performance of its duties.
SB argues that even if obstruction is a necessary element in a constructive contempt case, Reece’s perjury met this element because it interfered with and prejudiced SB during the underlying litigation. While we agree that Reece’s perjury undoubtedly may have caused SB difficulty in the discovery process, we cannot say, on this record, that it obstructed the court in the performance of its duties. Reece’s behavior was reprehensible: he admitted to making intentional misstatements during his deposition concerning core issues in the underlying litigation, behavior which inevitably caused his opponent delays and additional costs. See Soliz v. State, 97 S.W.3d 137, 142 (Tex.Crim.App.2003) (observing that perjury, including in a deposition, has the effect of hindering the accurate resolution of legal proceedings). But we fail to see how Reece’s misstatements during his deposition rose to the level of actually obstructing the court in the performance of its duties. Neither the contempt orders, nor the record, demonstrate this additional element of obstruction.
*368 During discovery it is inevitable that inconsistencies will arise, but the function of our legal system is to ascertain the truth from within these inconsistencies. See In re Michael, 326 U.S. at 227-28, 66 S.Ct. 78. As the Supreme Court reminds us:
All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact finding tribunal must hear both truthful and false witnesses.
Id. We are loath to contemplate a system where litigants and their attorneys scour transcripts, searching for any misstatement for the sole purpose of accusing the opponent of contempt and ultimately securing the opponent’s confinement. Authorizing contempt in a situation such as the instant one also begs several questions. Is any misstatement during a deposition punishable by contempt, no matter how immaterial? Or, as the Supreme Court has noted, could a court, in believing a witness testified falsely, punish the person for contempt with the purpose of compelling the person to testify in a manner the court considers truthful? See Ex parte Hudgings, 249 U.S. at 384, 39 S.Ct. 337. The Supreme Court has warned of “a potentiality of oppression and wrong” that could result from authorizing a court to exercise its contempt power in a situation of stand-alone perjury. See id. If a court may hold a litigant in contempt for making misstatements during a deposition, the risk for the “oppression and wrong” the Supreme Court contemplated becomes too great. See id.
A trial court has other weapons in its arsenal to discourage perjury during a deposition without resorting to restraining a person’s liberty in a contempt proceeding. First, a deposition is a discovery tool. As such, our rules make available the possibility of a range of sanctions for discovery abuse. See Tex.R. Civ. P. 215; Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex.1986) (per curiam). Here, SB moved for sanctions in response to Reece’s admission that he lied during the deposition; the trial court issued a show cause order concerning contempt on its own initiative. The trial court could have found that Reece abused the discovery process and imposed sanctions ranging from payment of SB’s expenses caused by the failure, including attorney’s fees, to rendering a default judgment. See Tex.R. Civ. P. 215.3, 215.2(b)(1) — (5), (8).
Second, a trial court has the option of referring a perjury allegation to the district attorney for criminal prosecution. See Soliz, 97 S.W.3d at 146 (noting the power of courts to prosecute perjury within the parties’ depositions). As applicable to this case, a person commits the offense of perjury if, with intent to deceive, the person makes a false statement under oath; such an offense is punishable as a Class A misdemeanor. Tex. Penal Code § 37.02. The greater offense of aggravated perjury is available if the perjury is made in connection with an official proceeding and is material, punishable as a third degree felony. Id. § 37.03.[12]
*369 “Courts ‘must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.’ ” Ex parte Gibson, 811 S.W.2d at 596 (quoting Brown v. United States, 356 U.S. 148, 153, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958)). Because we hold that perjury committed during a deposition is only punishable by contempt if the act additionally obstructs the court in the performance of its duties, and that no such obstruction occurred here, the trial court’s contempt orders against Reece are void.[13] Accordingly, we conclude the trial court abused its discretion by holding Reece in contempt.[14]
III. No Adequate Remedy by Appeal
We now turn to whether Reece has met the second element required for the exercise of our mandamus jurisdiction: the lack of an adequate remedy by appeal. The parties agree this Court lacks jurisdiction to grant habeas relief in this matter; we may only exercise our habeas jurisdiction when the contemnor’s confinement is on account of a violation of an order, judgment, or decree previously made in a civil case. See Tex. Gov’t Code § 22.002(e); Tex. Const, art. V, § 3. The Court of Criminal Appeals — and not this Court — is the state’s appellate court afforded general original habeas jurisdiction.[15] See Tex. Const. art. V, § 5; Ex parte Thompson, 273 S.W.3d 177, 181 (Tex.Crim.App.2008). Reece contends that because the Court of Criminal Appeals refuses to exercise its habeas jurisdiction, he is left with no avenue to challenge his confinement. Under these circumstances, Reece argues this Court should exercise its mandamus jurisdiction and release him from confinement. SB counters that this Court lacks jurisdiction over Reece’s mandamus petition because it is inherently a habeas petition styled as a mandamus petition: SB contends habeas is the only vehicle for challenging a person’s confinement in a contempt case, and a party may not relabel a petition as one of mandamus to evade this requirement.
As stated above, the Texas Constitution grants this Court limited jurisdiction to review lower court decisions through the writ of habeas corpus. Tex. Const. art. V, § 3(a) (“The Supreme Court *370 and the Justices thereof shall have power to issue writs of habeas corpus, as may be prescribed by law.... ”). Section 22.002(e) of the Government Code prescribes the reach of this Court’s habeas jurisdiction:
The supreme court or a justice of the supreme court, either in termtime or vacation, may issue a writ of habeas corpus when a person is restrained in his liberty by virtue of an order, process, or commitment issued by a court or judge on account of the violation of an order, judgment, or decree previously made, rendered, or entered by the court or judge in a civil case.
Tex. Gov’t Code § 22.002(e) (emphasis added). Thus, if the basis of contempt is not a previous violation of a court order, this Court lacks jurisdiction to review a sentence of confinement by way of writ of habeas corpus, even in a civil case. Ex parte Morris, 162 Tex. 530, 349 S.W.2d 99, 100 (1961) (orig. proceeding).
We have previously indicated that a petition for writ of habeas corpus is generally the only method for attacking an order of contempt. See Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824, 827 (1960) (orig. proceeding) (“We have uniformly held in this State ... that the validity of a contempt judgment can be attacked only collaterally and that by way of habeas corpus.”). However, we also left open the possibility of circumstances “where the writ of habeas corpus would not be adequate and where mandamus would be the proper remedy.” Id.; see also Dunn v. Street, 938 S.W.2d 33, 35 (Tex.1997) (orig. proceeding) (per curiam) (citing Deramus and observing same).
On this basis, we have held mandamus is available to challenge an order of contempt not involving confinement given the unavailability of the Court’s statutory habeas corpus jurisdiction in that circumstance. See In re Long, 984 S.W.2d 623, 625 (Tex.1999) (orig. proceeding) (per curiam) (“Contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus.”); Rosser v. Squier, 902 S.W.2d 962, 962 (Tex.1995) (orig. proceeding) (per curiam) (entertaining the exercise of mandamus jurisdiction to determine whether fine-only contempt order was void, given the unavailability of the Court’s habeas jurisdiction). But, today, we examine whether section 22.002 permits this Court to exercise its mandamus jurisdiction when the contemnor is confined.
Like SB, several courts of appeals have presumed mandamus is limited to the review of fine-only contempt orders, but not orders that result in confinement.[16] In determining whether this maxim is correct, we first consider the contours of both our own and the Court of Criminal Appeals’ habeas jurisdiction, and then address our mandamus jurisdiction.
A. Habeas Corpus Jurisdiction
Before determining whether mandamus relief is available here, we note, and the parties do not dispute, that Reece may not *371 pursue relief through the writ of habeas corpus in this Court. By virtue of the particularities of this state’s bifurcated judicial system and the problems arising from the division of habeas corpus jurisdiction between the Court of Criminal Appeals and this Court, we lack habeas jurisdiction over this case. The Court of Criminal Appeals is the court of last resort for criminal matters, Tex. Const, art. V, § 5, while this Court is the court of final review for civil matters, id. art. V, § 3. This framework, while at times imperfect, has been in place since 1876, and is the cornerstone of the bifurcated system of appeals in this state. See State ex rel. McNamara, Co. Atty. v. Clark, 79 Tex.Crim. 559, 187 S.W. 760, 762 (1915) (“Whether wisely or unwisely, the people of this state in framing their Constitution divided the jurisdiction of the civil and criminal courts of final resort, conferring on the Supreme Court final jurisdiction in all civil matters, and upon [the Court of Criminal Appeals] final jurisdiction in all criminal matters.”).
The history of the two high courts’ respective habeas jurisdictions is less than clear. Until 1876, this Court possessed the general power to issue writs of habeas corpus, as well as appellate jurisdiction over criminal law matters. Tex. Const. of 1869, art. V, § 3; Tex. Const. of 1866, art. IV, § 3; Tex. Const, of 1861, art. IV, § 3; Tex. Const, of 1845, art. IV, § 3; see also Ex parte Jackson, 113 Tex. 58, 252 S.W. 149, 150 (1923) (orig. proceeding). But in 1876, the newly adopted Texas Constitution removed jurisdiction over criminal eases from this Court and conferred such jurisdiction to the newly created Court of Appeals, which was granted not only jurisdiction over criminal appeals and certain low-dollar civil appeals, but also general authority to issue writs of habeas corpus. Tex. Const. art. V, § 3 (amended 1891 and 1980); id. § 6 (amended 1891); see Ex parte Jackson, 252 S.W. at 150.[17] At the same time, the Constitution revoked this Court’s habeas corpus jurisdiction. Tex. Const. art. V, § 3 (amended 1891 and 1980). In 1891, the Texas Constitution was amended to abolish the Court of Appeals and create the Court of Criminal Appeals, limiting the Court of Criminal Appeals’ appellate jurisdiction to criminal law matters, and granting this Court habe-as corpus jurisdiction once more, but only as “may be prescribed by law.” Tex. S.J. Res. 16, 22nd Leg., R.S., 1891 Tex. Gen. Laws 199, 199-200 (amending Tex. Const. art. V, §§ 3, 5). This constitutional provision has remained unchanged for over 100 years.
Though the Texas Constitution granted this Court habeas jurisdiction as “may be prescribed by law,” we lacked any actual statutory authority to grant writs of habe-as corpus until 1905, when the Legislature enacted Senate Bill 36. This bill authorized us to exercise habeas jurisdiction, but only in situations where a contemnor’s confinement is by virtue of a violation of an order in a civil case. Act of February 24, 1905, 29th Leg., R.S., ch. 17, § 1,1905 Tex. Gen. Laws 20, 20 (current version at Tex. Gov’t Code § 22.002(e)). This statute has remained substantively the same since its enactment and continues in effect today.
As a matter of historical context, the Legislature apparently enacted Senate Bill 36 to ensure the Court of Criminal Appeals determines criminal matters and this Court civil matters in habeas proceedings, in line with the bifurcated system contemplated in our Constitution. As the full *372 report from the House Judiciary Committee states:
Under the present status of the law all writs of habeas corpus sued out by a person who has been fined or imprisoned for a violation of any order, judgment or decree entered in a civil case, go upon appeal to the Court of Criminal Appeals instead of the Supreme Court. This often results in confusion and conflicts of decision authority. The object of the bill is to harmonize our judicial decisions and jurisdiction so that all civil matters shall be determined by the Supreme Court and all criminal matters by the Court of Criminal Appeals.
House Judiciary Comm., Full Report, Tex. S.B. 36, 29th Leg., R.S. (1905) (emphasis added). Over the past 100 years, contempt orders arising from civil cases concern a contemnor’s violation of a court order the vast majority of the time. See James L. Branton, Note, Ex parte Morris, 162 Tex. 530, 349 S.W.2d 99 (1961), 40 Tex. L.Rev. 413, 416 (1962) (noting the rarity of contempt judgments arising from civil cases that do not involve violations of a prior court order and recommending a legislative amendment to grant this Court jurisdiction over all contempt matters arising from civil cases). The Legislature, perhaps, simply did not envision contempt in civil cases extending beyond this limited scope, and so crafted this Court’s habeas jurisdiction accordingly. Similarly, the Court of Criminal Appeals has suggested the same purpose behind Senate Bill 36: to confer original habeas corpus jurisdiction to this Court in all civil cases in order to better maintain the bifurcated court system contemplated in the Texas Constitution. See Ex parte Wolf, 116 Tex.Crim. 127, 34 S.W.2d 277, 278 (1930) (noting that the Court of Criminal Appeals should avoid exercising habeas jurisdiction in civil cases due to the possibility of “find[ing] ourselves in conflict with the civil courts, and thus interfer[ing] with [the civil courts’] proper functioning and the administration of justice”); Ex parte Zuccaro, 72 Tex.Crim. 214, 162 S.W. 844, 845 (1913) (observing that the Court of Criminal Appeals has jurisdiction in criminal cases and has no jurisdiction in “civil cases of any character”).
Nonetheless, this Court has generally properly declined to exercise habeas jurisdiction in contempt cases arising from civil suits where a violation of a court order is not the grounds for contempt, as required by the plain language of section 22.002(e) and its predecessors.[18] But the result of *373 this Court’s limited habeas jurisdiction in civil cases has led to an occasional inefficient back-and-forth between the Court of Criminal Appeals and this Court on the issue of jurisdiction, as well as some difficulties when the underlying case is civil in nature, but falls inside the statutory loophole created by the particular division of habeas jurisdiction between the Court of Criminal Appeals and this Court.
Despite its general original habeas jurisdiction, the Court of Criminal Appeals has deferred to this Court in cases where the two courts clearly have concurrent habeas jurisdiction over civil matters.[19] And, as in the instant case, the Court of Criminal Appeals has preferred to defer to this Court in contempt proceedings arising from civil cases before exercising its habe-as jurisdiction, even when it is less evident this Court possesses jurisdiction over the matter.[20] The issue we must resolve is whether mandamus is an appropriate remedy in a situation where we lack habeas jurisdiction to review a contempt order involving confinement arising from a civil case, but the Court of Criminal Appeals declines to exercise its general habeas jurisdiction.
B. Mandamus Jurisdiction
Unlike our habeas jurisdiction, our constitutional and statutory grant of mandamus jurisdiction is broad; this Court possesses general original jurisdiction to issue writs of mandamus. See Tex. Const, art. V, § 3(a) (granting the Court *374 power to issue writs of mandamus as specified by the Legislature); Tex. Gov’t Code § 22.002(a) (permitting the Court to issue writs of mandamus “agreeable to the principles of law regulating those writs”). Because we ascertain nothing in the statutory grant of our mandamus jurisdiction precluding us from granting relief here, and further determine the circumstances of this case warrant the exercise of our mandamus jurisdiction, we conclude mandamus is an appropriate remedy for Reece’s unlawful confinement.
First, the limit SB proposes on our mandamus jurisdiction is unwarranted as a matter of statutory construction. While a person must be confined for us to exercise our habeas jurisdiction, this is so only because the habeas statute specifically states that a person must be “restrained in his liberty” for that remedy to be available. See Tex. Gov’t Code § 22.002(e). But the converse is not true: our statutory grant of habeas jurisdiction does not prohibit us from exercising mandamus jurisdiction when a person is confined. See id. Nor does the statute prescribing our mandamus jurisdiction state that mandamus relief is unavailable when a person is confined — instead, as noted above, our statutory grant of mandamus jurisdiction is broad. Id. § 22.002(a). The Legislature could have included language designating habeas corpus as the exclusive remedy for unlawful confinement, but declined to do so. Cf. MCI Sales & Serv., Inc. v. Hinton, 329 S.W.3d 475, 504 (Tex.2010) (declining to limit a statutory designation as exclusive since the terms of the statute did not include such a limitation). We will not read such a limitation into the statutory scheme governing our mandamus jurisdiction.
Further, mandamus is an “extraordinary remedy, not issued as a matter of right, but at the'discretion of the court.” In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 138 (Tex.2004) (orig. proceeding). “Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss....” Id. at 136. Mandamus is a remedy not restricted by “rigid rules” that are “necessarily inconsistent with the flexibility that is the remedy’s principle virtue.” Id.; see also In re McAllen, 275 S.W.3d at 464 (noting that whether a clear abuse of discretion can be remedied on appeal “depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories”). And mandamus is a proper vehicle for this Court to correct blatant injustice that otherwise would elude review by the appellate courts. See In re Prudential, 148 S.W.3d at 138.
It is difficult to imagine a circumstance more compelling for the exercise of our mandamus jurisdiction than a situation where the relator’s liberty interests are threatened without a remaining procedural safeguard for challenging his confinement. Certainly, a result of our inaction is a potential waste of judicial and litigant resources as the case travels between this Court and the Court of Criminal Appeals, with neither court exercising jurisdiction to consider the merits of Reece’s petition. But the further consequence of Reece’s lack of an adequate appellate remedy in this matter is his unlawful confinement: the relator’s very liberty interests are at stake with no other procedure to challenge his confinement in our state courts.
Finally, because mandamus is expressly reserved for situations where a relator lacks an adequate remedy by appeal, we have employed it in other situations where, as here, a statutory gap prevents the relator from obtaining adequate appellate relief. For example, before the Legislature *375 enacted section 51.016 of the Civil Practice and Remedies Code, a party improperly denied the benefit of arbitration under the Federal Arbitration Act had no right to interlocutory appeal in state courts. See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding). The Court therefore held mandamus was the appropriate remedy in wrongful denials of motions to compel arbitration under the FAA since otherwise the very subject of the appeal — the right to arbitrate, as contracted for by the parties — would be rendered illusory. Id. Eventually, of course, the Legislature closed this gap by enacting a law authorizing interlocutory appeals under the FAA in Texas courts. See Tex. Civ. Prao. & Rem.Code § 51.016.[21]
More relevant to the instant dispute, until 1978, the Court of Criminal Appeals lacked jurisdiction to grant writs of mandamus except as necessary to protect its own judgments. See Tex. Const, art. V, § 5 (amended 1977 and 1980); Thomas v. Stevenson, 561 S.W.2d 845, 847 (Tex.Crim.App.1978). To fill this jurisdictional gap, this Court occasionally entertained mandamus petitions filed by criminal defendants, primarily involving requests to compel courts to begin trial in accordance with the defendant’s right to a speedy trial. See, e.g., Fariss v. Tipps, 463 S.W.2d 176, 180-81 (Tex.1971) (orig. proceeding) (observing that this Court has mandamus jurisdiction in civil and criminal cases and defendant seeking speedy trial has no adequate remedy by appeal); Lawrence v. State, 412 S.W.2d 40, 40 (Tex.1967) (orig. proceeding) (per curiam); Cooper v. State, 400 S.W.2d 890, 890-92 (Tex.1966) (orig. proceeding); Wilson v. Bowman, 381 S.W.2d 320, 321 (Tex.1964) (orig. proceeding). In 1978, the people amended the Texas Constitution, granting the Court of Criminal Appeals mandamus jurisdiction over all criminal law matters. See Tex. S.J. Res. 18, 65th Leg., R.S., 1977 Tex. Gen. Laws 3359, 3359-60; Stevenson, 561 S.W.2d at 84647.[22] This Court has since limited its exercise of mandamus review to civil matters. See Stevenson, 561 S.W.2d at 847.[23]
Our Constitution grants the Court of Criminal Appeals jurisdiction over criminal matters and this Court jurisdiction over civil cases. Tex. Const, art. V, §§ 3, 5. As it has done historically, the Court of Criminal Appeals prudently deferred to this Court because the underlying case is civil in nature. But, by virtue of a statutory limitation, we lack jurisdiction to issue a writ of habeas corpus to discharge the relator from unlawful confinement in this *376 civil case. The constitutional and statutory contours of our mandamus jurisdiction, however, are not so limited. Because the Court of Criminal Appeals declines to exercise jurisdiction over this civil case, Reece is left without a procedure for challenging his confinement in our state appellate courts. Accordingly, we hold Reece has no adequate remedy by appeal. We note that our holding is limited to situations where the underlying dispute is civil in nature, and the Court of Criminal Appeals declines to exercise its habeas jurisdiction. A relator does not lack an adequate remedy by appeal when the Court of Criminal Appeals entertains the merits of a habeas petition but dismisses with prejudice or denies relief. In other words, a relator is not entitled to a “second bite at the apple” by virtue of our holding.
C. Response to Dissent
In his dissent, Justice Willett argues that an “express statutory prohibition” precludes our exercise of mandamus jurisdiction here. Justice Willett points to the unavailability of our habeas jurisdiction in this matter as a “sign” that we are not meant to hear appeals of any sort — including by way of mandamus — arising from contempt orders not involving a violation of a previous court order. As such, Justice Willett reads the statute permitting us to issue writs of mandamus “agreeable to the principles of law regulating those writs,” Tex. Gov’t Code § 22.002(a), as circumscribed by the limitations in our habeas statute. Yet, the plain text of the statute governing our original proceeding jurisdiction does not comport with Justice Wil-lett’s interpretation. As discussed above, neither our statutory grant of habeas or mandamus jurisdiction prohibits us from exercising mandamus jurisdiction when a person is confined, and we decline to read such a limitation into the language of the statute.
Despite his statements to the contrary, the rule Justice Willett’s dissent attempts to establish is that express legislative permission is required for us to exercise our mandamus jurisdiction. Under his reasoning, if a statute grants jurisdiction in only a limited circumstance, it must follow that we are forbidden from exercising our mandamus jurisdiction in a situation falling outside the parameters of that limitation. The weakness inherent in this argument is obvious in the context of arbitration. We could have interpreted the Legislature’s specific allowance for interlocutory appeal under the Texas Arbitration Act in the absence of a law allowing for the same under the Federal Arbitration Act as a “sign” that the Legislature did not intend for any appeal, including by mandamus, under the FAA. But we wisely declined to limit our mandamus jurisdiction so narrowly.
Further, a review of our precedent reveals its support for our — and not Justice Willett’s — interpretation of our mandamus jurisdiction. We decline to overrule Deramus because the general proposition in Deramus is still valid. In Deramus, we stated that a petition for writ of habeas corpus was the only manner for challenging a contempt judgment, but left open the possibility of the availability of mandamus in a situation where habeas would prove inadequate. See Deramus, 333 S.W.2d at 827. Seizing on that exception, we have exercised our mandamus jurisdiction in situations of fine-only contempt where, under the constraints of the habeas statute, we lacked habeas jurisdiction. See Rosser, 902 S.W.2d at 962; In re Long, 984 S.W.2d at 625; Tex. Gov’t Code § 22.002(e) (authorizing this Court to issue a writ of habeas corpus “when a person is restrained in his liberty ” by virtue of violating a previous order) (emphasis added). Here, as in Ros-ser and In re Long, the habeas statute *377 does not permit our exercise of habeas jurisdiction, but it does not follow that we may not exercise our broader mandamus jurisdiction. In Rosser and In re Long, we declined to read the limitations in our ha-beas statute as a legislative prohibition against our exercise of mandamus jurisdiction. We decline to do so here as well.
We finally observe that whatever one’s view of our bifurcated judicial system, it is the system established by the people of this state. The bifurcated system, pursuant to our Constitution, establishes this Court as the court of final resort for civil matters, see Tex. Const, art. V, § 3, and the Court of Criminal Appeals as the court of final resort for criminal matters, see id. art. V, § 5. The instant case — a business dispute in which a party to the case was held in contempt for lying during a deposition — is unquestionably civil, and not criminal, in nature. A case of criminal contempt does not depend on whether the underlying case is civil or criminal, see generally Ex parte Werblud, 536 S.W.2d at 545-46, nor require the same procedural safeguards as those required in a criminal case, see id. at 547 (noting that contempt statute is exempted from requirements of a jury trial). Under our bifurcated system, it is legal, as well as logical, for this Court to exercise its mandamus jurisdiction in a civil case where the Court of Criminal Appeals has refused to exercise its jurisdiction and has deferred to this Court. While a man’s very liberty is at stake, Justice Willett focuses on policy issues concerning our bifurcated judicial system that are beyond the purview of the case before us today and are best left to the people of Texas and their elected legislative officials. The people have entrusted this Court with expertise over civil matters and our sister court with the same over criminal matters. We honor this decision in exercising our jurisdiction over this civil case today.
IV. Conclusion
Because the trial court abused its discretion in confining Reece for criminal contempt for acts of perjury occurring during a deposition and Reece has no adequate remedy by appeal, we conditionally grant the writ of mandamus and order the trial court to vacate the May 29, 2009, and June 24, 2009, contempt judgments against Reece. We are confident the trial court will comply, and our writ will issue only if it does not.
Justice JOHNSON filed a dissenting opinion.
Justice WILLETT filed a dissenting opinion, in which Justice JOHNSON joined as to Part IV.

. In the underlying suit, SB accuses Reece and codefendants of diverting business from SB by secretly convincing SB's customers to place orders directly with SB’s suppliers, enabling Reece and his codefendants to keep all profits rather than sharing the profits with SB as required by their contracts.

. The motion for sanctions was a renewed motion. SB had previously moved for sanctions based on what it suspected was the defendants’ lack of credibility, but it did not have proof of any of the defendants’ misrepresentations or misstatements until Reece's admission. The trial court twice carried this motion.

.Texas courts of appeals only have habeas jurisdiction in situations where a relator's restraint of liberty arises from a violation of an order, judgment, or decree previously made by a court or judge in a civil case. Tex. Gov't Code § 22.221(d).

. The motion for reconsideration is still pending at the Court of Criminal Appeals, presumably because that court is awaiting this Court’s ruling on Reece’s mandamus petition.

. There are limits, however, to a trial court’s ability to summarily hold someone in direct contempt. See Ex parte Knable, 818 S.W.2d 811, 813 (Tex.Crim.App.1991) (observing that summary punishment for direct contempt flows from both the court's observation of the conduct and the exigency of the situation); In re Bell, 894 S.W.2d at 129 (same).

. See also In re Coppock, 277 S.W.3d 417, 419 (Tex.2009) (orig. proceeding) (noting that civil contempt is the process by which a court can exert its authority to compel obedience with one of its orders).

. See, e.g., Ex parte Gonzalez, 111 Tex. 399, 238 S.W. 635, 636 (1922) (orig. proceeding) (the purpose of contempt is to either "compel due decorum and respect in its presence" (i.e., direct contempt) or compel "due obedience to its judgments, orders, and process” (i.e., constructive contempt)); see also In re Bell, 894 S.W.2d at 132 (Jones, J., concurring) (noting that while direct contempt rests on a direct affront to the authority or dignity *366 of a court, regardless of the existence of an order or decree of that court, in constructive contempt, " 'but for the order or decree violated, the allegedly contemptuous conduct would not constitute contempt’ ”) (quoting Wendell A. Odom & Lang A. Baker, Direct and Constructive Contempt, An Attempt to Clarify the Confused History of a Confused Distinction in the Jurisprudence of Texas, 26 Baylor L.Rev. 147, 150 (1974)).

. But see Ex parte Arnold, 503 S.W.2d 529, 533-34 (Tex.Crim.App.1974) (suggesting constructive contempt is limited to violations of orders, but going on to state that constructive contempt would be available in a situation where a defamatory publication is calculated to interfere with the administration of justice).

. The statute also provides that punishment for criminal contempt may not exceed $500 or confinement for more than six months in jail, see Tex. Gov't Code § 21.002(b), but provides no similar limits for civil contempt, see id. § 21.002(e). The Federal Rules of Criminal Procedure provide more detailed instructions for the procedures a court must utilize in holding a person in criminal contempt. Fed.R.Crim.P. 42.

.Though not at issue in this case, obstruction includes the flagrant disregard of a court order. See Ex parte Taylor, 807 S.W.2d at 750. We have also previously observed that intentional disrespect is a proper alternative ground for contempt, Ex parte Norton, 191 S.W.2d at 714, though this ground is invariably limited to situations of direct contempt, such as when an attorney deliberately insults a judge during open proceedings.

. Though an unpublished opinion, it is helpful to compare Ex parte Gibson to the factual scenario of In re Wightman, No. 05-98-01697-CV, 1998 WL 877494, at *1 (Tex.App.Dallas Dec. 17, 1998, orig. proceeding) (not designated for publication). In In re Wightman, a plaintiff’s attorney was held in contempt for mailing a judge a letter not only questioning the judge’s competence and corruptibility, but also threatening suit against the judge if he did not rule as the attorney wished. In In re Wightman, unlike Ex parte Gibson, the attorney’s conduct obstructed court operations by attempting to coerce the judge to rule as he wished.

. We also note that while confinement is a possibility in a criminal prosecution for perjury just as it is in a contempt proceeding, the procedural distinctions between the two are important: although a court is required to employ various procedural safeguards similar to those found in a criminal prosecution in a constructive criminal contempt case, these procedures do not duplicate a criminal trial. Namely, a person charged with criminal con *369 tempt is not entitled to a trial by jury. See Tex. Gov’t Code § 21.002(b); Ex parte Werblud, 536 S.W.2d at 547 (observing that the Texas contempt statute authorizes punishment for not more than six months, falling within the definition of “petty” contempt that is exempted from the requirements of a jury trial); see also Muniz v. Hoffman, 422 U.S. 454, 475-76, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975). On the other hand, under the criminal procedures of this state, a person charged with a crime is entitled to have the person’s case tried by a jury. Tex Code Cmm. Proc. arts. 1.05, 1.12. When a trial court possesses the ability to hold a person in contempt and confine him for perjury, the alleged perjurer lacks any possibility of having his case tried before a jury, as would be his right in a criminal prosecution. See Matusow, 229 F.2d at 343 (observing that allowing contempt for perjury ”permit[s] too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury”).

. Of course, under our rules, a person may be held in contempt for failure to appear, to be sworn, or to answer questions during a deposition after being directed to do so by the trial court. Tex.R. Civ. P. 215.2. The federal rules contain a similar provision. See Fed. R.Civ.P. 37(b)(1).

. Reece also argues the contempt judgments are void because the show cause order did not afford him due process. Because we hold the contempt judgments are void on other grounds, we need not reach this issue.

. As mentioned previously, the courts of appeals possess the same habeas jurisdiction as this Court. See Tex. Gov't Code § 22.221(d).

. See In re M.J., 227 S.W.3d 786, 793 (Tex.App.-Dallas 2006, pet. denied [mand. denied] ) (denying mandamus petition since contempt order involved confinement and observing that contempt order involving confinement must be challenged by writ of habe-as corpus, while contempt orders not involving confinement are only reviewable through mandamus); Cadle Co. v. Lobingier, 50 S.W.3d 662, 671 (Tex.App.-Fort Worth 2001, pet. denied) (en banc) ("A contempt judgment is reviewable only via a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved).”); In re Zenergy, Inc., 968 S.W.2d 1, 11-12 (Tex.App.Corpus Christi 1997, orig. proceeding) (concluding habeas — and not mandamus — is the proper vehicle for challenging contempt order assessing both fine and confinement).

. For a general review of the history of original jurisdiction in our state's high courts, see George E. Dix, Appellate Review by Mandamus and Prohibition in Texas Criminal Litigation, 17 Tex. Tech L.Rev. 75, 80-89 (1986).

. For example, in a case somewhat similar to this one, this Court dismissed a contem-nor’s habeas petition for want of jurisdiction where the contemnor was found to have given false testimony during court proceedings. Ex parte Morris, 349 S.W.2d at 100-01. In doing so, we stated that the habeas statute limited the Court’s habeas power to restraints brought about by an order or process of a court issued because of a violation of an order, judgment, or decree in a civil case. Id. We concluded that ”[t]o say that [the habeas statute] empowers us to act whenever the restraint grows out of proceedings in a civil case, it would be necessary to disregard the [other language in the statute].” Id. See also, e.g., Ex parte Hofmayer, 420 S.W.2d 137, 138 (Tex.1967) (orig. proceeding) (declining to exercise habeas jurisdiction over juvenile's challenge of his confinement in boys' school and noting that the habeas statute did not allow us to do so even though the juvenile’s case was civil); Ex parte Jackson, 252 S.W. at 149 (observing that the habeas statute "limits our power in the language just stated; that is, we may inquire only into the restraint brought about by an order or process of the court issued because of the violation of some order, judgment, or decree in a civil case”). But see Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000, 1005 (1947) (orig. proceeding) (upholding a contempt judgment arising from an attorney arguing with a judge in open court without discussion of the statutory limits on this Court’s habeas jurisdiction); Ex parte Calhoun, 127 Tex. 54, 91 S.W.2d 1047, 1048- *373 49 (1936) (orig. proceeding) (dismissing habe-as jurisdiction because of contemnor’s lack of restraint, but finding Court possessed jurisdiction to consider petition in civil contempt case without discussion of whether the con-temnor’s acts — described by the trial court as "contemptible” — involved the violation of a court order).

. See, e.g., Ex parte Jones, 163 Tex.Crim. 475, 294 S.W.2d 111, 112 (1956) (dismissing habe-as petition arising from contempt proceeding due to contemnor’s violation of a court order because "[t]he many questions raised appear to be civil in nature” and "this Court will exercise its jurisdiction only upon a showing that the civil courts have declined to pass upon the legality of the confinement of rela-tors under the contempt decree”); Ex parte Wolf, 34 S.W.2d at 277-78 (declining to reinstate habeas petition since the contempt proceeding arose from the alleged contemnor’s failure to observe an order in a civil case and directing the contemnor to this Court); Ex parte Alderete, 83 Tex.Crim. 358, 203 S.W. 763, 764 (1918) (”[I]n a contempt proceeding where it appears that it grows out of an alleged failure to observe an order in a civil cause this court will refuse to grant the writ relegating the party to his remedy in the Supreme Court."); Ex parte Zuccaro, 162 S.W. at 845-46 (dismissing habeas petition without prejudice where relator was confined for violation of an injunction in a civil case because “it was intended that the Supreme Court should first be given an opportunity to take jurisdiction in such matters as are provided for by [the statute granting this Court habeas corpus jurisdiction]”).

. For example, in Ex parte Duncan, the con-temnor was held in contempt due to certain statements made in a brief in a civil case. 78 Tex.Crim. 447, 182 S.W. 313, 313 (1916). Apparently the contemnor first filed a habeas petition with the Court of Criminal Appeals, which declined to exercise its jurisdiction until it was first presented to this Court as the Court of Criminal Appeals believed this Court had jurisdiction given the underlying case’s civil nature. Id. One of the justices of this Court apparently endorsed on the contem-nor’s habeas petition that we lacked jurisdiction, but that the Court of Criminal Appeals did possess jurisdiction under the Constitution to issue the writ. Id. Only then did the Court of Criminal Appeals exercise its habeas jurisdiction and release the contemnor from confinement. Id. at 314. See also Ex parte Cvengros, 384 S.W.2d 881, 882 (Tex.Crim.App.1964) (observing that ”[a]s a general practice, where there is reason to believe that the application falls within the area of concurrent jurisdiction, the Court of Criminal Appeals will decline to act until the Supreme Court has decided whether the case comes within its restricted habeas corpus jurisdiction”).

. Similarly, we have exercised our mandamus jurisdiction in situations where a trial court improperly denies a motion to dismiss premised on an inadequate expert report under former article 4590i. See Tex.Rev.Civ. Stat. art. 4590i (repealed 2003). Article 4590i did not provide for interlocutory appeal of such a denial, but in In re McAllen we held mandamus was available to contest an improper denial of a challenge to an inadequate expert report to fill this statutory gap. In re McAllen, 275 S.W.3d at 461-62. The Legislature, in enacting Texas Civil Practice and Remedies Code section 74.351, subsequently allowed for interlocutory appeal in such a situation. See Tex. Civ. Prac. & Rem.Code § 74.351; see also id. § 51.014.

. See generally 6 Roy W. McDonald & Elaine A. Grafton Carlson, Mcdonald & Carlson Texas Civil Practice § 35:2 (2d ed.2010).

. Indeed, in Stevenson, the petitioner initially filed his mandamus petition with this Court, but we transferred the case to the Court of Criminal Appeals so that they could determine if they had jurisdiction to issue writs of mandamus to compel speedy trials concurrently with this Court. Stevenson, 561 S.W.2d at 846. Once the Court of Criminal Appeals determined it had concurrent jurisdiction to issue writs of mandamus in these cases, this Court discontinued its practice of hearing these sorts of petitions. See Dix, supra note 17, at 87-88.