COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

IN RE: LILLIAN BLANCAS,
IN HER OFFICIAL CAPACITY AS AN
ASSISTANT DISTRICT ATTORNEY
FOR THE STATE OF TEXAS,

Relator.

§

§

§

§

§

No. 08-13-00256-CR

AN ORIGINAL PROCEEDING

IN MANDAMUS

## **O P I N I O N**

Lillian Blancas, Relator, has filed a petition for writ of mandamus against the Honorable Marcos Lizarraga, Judge of the 168th District Court of El Paso County, Texas (hereinafter Respondent) requesting that we order Respondent to set aside all orders initiating contempt proceedings against Relator without providing notice of the charges and affording a reasonable amount of time to prepare for a hearing.[1] We conditionally grant the writ of mandamus.

### **FACTUAL BACKGROUND**

This mandamus proceeding arises out of the criminal prosecution of the real party in interest, Roberto Flores, who is charged by indictment with family violence assault.[2] Prior to indictment, Flores was placed on a $10,000 personal recognizance bond.

---

[1] Two other assistant district attorneys, Melissa Warrick and Tom Darnold, have also filed petitions for writ of mandamus against Respondent requesting the same relief. *See In re Melissa Warrick*, No. 08-13-00255-CR; *In re Tom Darnold*, No. 08-13-00257-CR.

[2] The criminal case is styled *The State of Texas v. Roberto Flores* (cause number 20130D03010) and is pending in the 168th District Court of El Paso County, Texas.

*Events of July 10 - 12, 2013*

Following indictment, a capias was issued and Flores was scheduled for arraignment on July 10, 2013 at 7:30 a.m. as well as a hearing on his motion to withdraw the capias. Flores appeared with his attorney, Ruben Nunez, prior to 7:30 and executed a waiver of arraignment. Nunez subsequently left the 168th District Court, but he returned to the courtroom at 11:30 a.m. for a hearing on the motion to withdraw the capias. Assistant District Attorneys Melissa Warrick and Lillian Blancas were assigned to the 168th District Court at the time and they appeared on behalf of the State at that hearing. Flores requested that Respondent continue him on the same personal recognizance bond and not require him to be booked through the jail. Respondent indicated that he understood the State was taking the position that it was necessary for Flores to be booked on the charged offense because it would create problems with respect to establishing his identity in the future if he was not booked. Respondent did not rule on Flores' motion and instead continued the hearing to 3:00 p.m. that afternoon. Respondent told the parties that Flores would be in the constructive custody of the bailiff in the meantime under whatever conditions the bailiff decided were appropriate, but Flores would not be allowed to leave the courthouse. Respondent instructed the prosecutors to provide him with authority regarding the extent of his discretion to grant the motion and permit Flores to not be booked. He also asked them to let him and Nunez know if they were "inclined to call another peace officer to interrupt that [sic] custody . . . ." Respondent then adjourned the proceedings.

At 2:00 p.m. that same day, Respondent requested the attorneys to return to the courtroom and he called the Flores case for a hearing to address what he characterized as "dirty pool." Warrick and Blancas appeared on behalf of the State and Darnold was present in the courtroom. The bailiff, identified on the record as Mr. Quinn, stated that Deputy Robinson had

just informed him that one of the Assistant District Attorneys had gone to the Sheriff's Office and demanded that Flores be arrested. Mr. Quinn reported the conversation with Deputy Robinson to Respondent. Respondent then asked the Assistant District Attorneys if they were going to let him know they were attempting to have Flores arrested. Blancas responded that she had talked to the bailiff earlier and let him know what they were trying to do and the bailiff subsequently went into Respondent's office. Blancas spoke with Respondent in the hallway and Respondent acknowledged he was aware that a peace officer who has an arrest warrant or capias has a duty to be diligent in executing it. Blancas returned to Deputy Robinson's office and spoke to him again about the situation. Deputy Robinson told them that he had spoken with the bailiff and had been informed that Flores would be placed under arrest at the conclusion of the afternoon hearing so they did not need to worry about it anymore.

Respondent asked Blancas if she thought it was okay to take action during the recess to have Flores arrested given the instructions Respondent had stated at the conclusion of the earlier hearing. She replied that she believed it was proper because there was an active capias. Blancas cited Article 23.13 of the Code of Criminal Procedure[3] in support of her position, but Respondent stopped her from further discussing the merits of the issue raised by Flores' motion to withdraw the capias. Blancas added that Respondent had instructed her to let him know if they intended to have Flores arrested, and she had notified the bailiff that they had talked to the Sheriff's Office about having Flores arrested. She apologized for not contacting Nunez immediately but explained that she did not have his cell phone number.

The parties subsequently argued the merits of Appellant's motion to withdraw the capias and whether it was necessary for Flores to be arrested and booked. When Respondent asked the

---

[3] *See* TEX.CODE CRIM.PROC.ANN. art. 23.13 (West 2009)("In felony cases, the defendant must be delivered immediately to the sheriff of the county where the arrest is made together with the writ under which he was taken.").

State to explain its position with regard to the arrest of Flores, Blancas argued that because a capias had been issued for Flores, he should be delivered immediately to the sheriff pursuant to Article 23.13. Blancas asserted that if Flores was not arrested and booked through the jail, he would not be fingerprinted or photographed and identity would become an issue in the case. After undertaking a review of the police report and a non-prosecution statement filed by the complainant, Respondent granted the motion to withdraw the capias and set Flores' bond at a $10,000 personal recognizance bond. Flores was not arrested or booked.

Near the conclusion of the hearing, Respondent addressed Warrick and Blancas. He stated that he had told them he expected to be told if they decided to have Flores arrested before the 3:00 p.m. hearing, but they had failed to do that and he would not trust them in the future. Assistant District Attorney Tom Darnold[4] then asked to address Respondent. Darnold explained that he found the circumstances regarding Flores' custody to be both confusing and unusual, so he had suggested to Blancas and Warrick that they ask a deputy sheriff to talk to the bailiff to determine the exact nature of the situation. Respondent explained that he purposely did not order the Assistant District Attorneys to not have Flores arrested because he knew it would result in a mandamus being filed against him. Respondent also expressed his belief that the District Attorney's Office was trying to exert all of its power to "teach [him] a lesson".

The following morning, July 11, 2013, Warrick and Blancas were present in the courtroom when Respondent called the Flores case. Respondent stated:

> Okay. Timing is an issue in these proceeding [sic], and so I am not doing that at this second, but I'm putting you on notice that as soon as I can get Mr. Darnold in here as well I'm going to hold -- I'm going to hold Ms. Warrick, you, Ms. Blancas, you, and Mr. Darnold in direct contempt regarding the proceeding that ended less than three busy [sic] hours ago.

---

[4] Darnold is Chief of the Appellate Section in the 34th District Attorney's Office.

And I know that we have other matters on the docket, that's the reason I'm not doing it right this second. But I would ask you to please -- I'll give you some time to go notify your office and I just need to know that Mr. Darnold is aware of this. I would appreciate his presence. I'm not going to have anybody arrested until I let -- or seized or held. My intent is to make sure that Mr. Darnold is on notice of my intent and then I will give you a time and an hour. I will give you-all time to get your lawyer to prepare any paperwork that you want for what I've told you I'm going to do.

If you are not going to attend the rest of the proceedings this morning, the docket, please send somebody up to take your place.

Respondent called the case again a short time later and Assistant District Attorney Joe Monsivais appeared on behalf of Warrick, Blancas, and Darnold. After Respondent confirmed that he intended to hold the three Assistant District Attorneys in contempt, Monsivais advised the court that Warrick, Blancas, and Darnold were asserting their Fifth Amendment rights. Respondent stated that he had already met with someone he identified as Ms. Tarango and individuals from the Sheriff's Office, and he had requested the presence of Chuck Molinar, Officer Pitblado, and Officer Chavez in the courtroom at 2:30 p.m. Respondent advised the parties that he had not been able to contact Flores' attorney so he had scheduled a contempt hearing for 2:30 p.m. Monsivais objected on the ground that Warrick, Blancas, and Darnold had not been given notice of the allegations against them, they had not been served with a show-cause order, and he asserted that Respondent lacked authority to summarily hold them in contempt without notice. Respondent determined that notice was not required because it was direct contempt, while Monsivais argued that the actions the court had an issue with had occurred outside of the presence of the court so it could not be direct contempt. Monsivais also argued that officers of the court were entitled to notice of the charges even if it was direct contempt. The court re-set the contempt hearing for 2:00 p.m. the following day, July 12, 2013.

- 5 -

Warrick, Blancas, and Darnold filed a written objection to the lack of notice of the specific allegations against each of them and they requested a separate hearing for each individual. They also objected to a lack of notice of the hearing. Respondent called the Flores case for announcements at the scheduled hearing time on July 12, 2013. Michael Wyatt, an Assistant County Attorney, attended the hearing and appeared on behalf of Warrick, Blancas, and Darnold. Joe Monsivais and Ballard Shapleigh appeared on behalf of the State and Ruben Nunez appeared on behalf of Roberto Flores. Monsivais invoked "the rule" and advised Respondent that the State had subpoenaed Respondent's bailiff and court coordinator. He asked that they be placed under the Rule, but Respondent stated he was not going to rule on the State's invocation of the Rule with respect to the bailiff and court coordinator. Respondent then asked Monsivais, Wyatt, and Nunez to meet with him in the jury room. Warrick, Blancas, and Darnold were not permitted to attend the meeting which lasted approximately four and one-half hours.

*The First Mandamus Proceeding*

While Respondent remained behind closed doors with the attorneys for several hours, Warrick, Blancas, and Darnold filed a motion for emergency relief with this Court. The Court granted that motion and stayed all proceedings in the Flores case pending resolution of the mandamus. Warrick, Blancas, and Darnold later filed a voluntary motion to dismiss the original proceeding on the ground that an agreement had been reached with Respondent whereby he would not proceed with the contempt action if they would dismiss the mandamus proceedings. We granted that motion and dismissed the case on Friday, August 23, 2013. *See In re The State of Texas*, No. 08-13-00186-CR, 2013 WL 4539878 (Tex.App.--El Paso August 23, 2013, orig. proceeding).

*Respondent Proceeded with the Contempt Hearing*

The following Monday morning, August 26, 2013, Respondent notified 34th District Attorney Jaime Esparza, Ruben Nunez, Michael Wyatt, Ballard Shapleigh, Joe Monsivais, and Lily Stroud by email that he intended to proceed with the contempt actions against Warrick, Blancas, and Darnold since the Eighth Court of Appeals had dismissed the mandamus action. He entered an order setting the contempt hearing for the following day, August 27, 2013 at 2:00 p.m. Respondent also severed the contempt proceeding against Darnold, who was out of town, from the contempt proceedings against Warrick and Blancas.

On August 27, 2013, the contempt proceeding began and Respondent notified the attorneys for the various parties that he had appointed Ruben Morales to serve as "legal advisor to the Court" in the event a mandamus proceeding was filed. Respondent also noted that Warrick, Blancas, and Darnold were not present and he asked Monsivais whether he or anyone from the D.A.'s office had contacted the court of appeals or anyone at the court of appeals, including clerks and secretaries, regarding the contempt proceeding. Monsivais said he had not and was not aware of anyone who had done so. Respondent then questioned Wyatt about the absence of Warrick, Blancas, and Darnold. Wyatt told Respondent that Darnold was out of town and Blancas and Warrick would not attend because they had not been served with a show cause order and they did not have sufficient notice of the hearing and contempt allegations. Respondent addressed at length the failure of Warrick and Blancas to attend the contempt hearing and Wyatt continued to assert that Respondent was required to serve them with notice of the hearing and the contempt allegations. Near the conclusion of the hearing, Respondent distributed to Wyatt a "draft" of the court's "observations . . . from the record" and told Wyatt he could consider that as notice. This document, which is titled "Notice of July 10 Actions

(Selected)" sets forth twenty-one paragraphs of what appear to be findings of fact. Some of the paragraphs cite to the reporter's record of the July 10, 2013 hearing. Other paragraphs cite to "Quinn Aff." which may refer to an affidavit provided to Respondent by his bailiff, Mr. Quinn. One paragraph cites to "Finding 22" but the document provided to Relator's attorney is cut off abruptly at paragraph or finding #21. This document is not signed by Respondent, and it cannot be construed as a show cause order. Further, it was never served on Warrick, Blancas, or Darnold. Warrick, Blancas, and Darnold filed petitions seeking mandamus relief and motions for emergency relief. We stayed the contempt proceedings in order to consider the unusual issues presented.

## CONTEMPT

The issues presented in this original proceeding is (1) whether Respondent clearly abused his discretion by initiating contempt proceedings against Relator and determining he is going to hold her in contempt of court without affording her due process; and (2) whether Relator has an adequate remedy at law.

### *Standard of Review*

To obtain mandamus relief, a relator must establish both that he has no adequate remedy at law to redress his alleged harm, and that what he seeks to compel is a ministerial act not involving a discretionary or judicial decision. *State ex rel. Young v. Sixth Judicial District Court of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex.Crim.App. 2007). If the relator fails to satisfy either aspect of this two-part test, then relief should be denied. *Id.* The second part of the test is satisfied if the relator can show he has a clear right to the relief sought. *Id.* This requirement is met when the facts and circumstances dictate but one rational decision under

unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles. *Id.*

*Direct Contempt v. Constructive Contempt*

Contempt has been defined as "disobedience to or disrespect of a court by acting in opposition to its authority". *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011), *quoting Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995)(orig. proceeding). Contempt is a broad and inherent power of a court, but it should be exercised with caution, *In re Reece*, 341 S.W.3d at 364, and as a "last resort." *Ex parte Pink*, 746 S.W.2d 758, 762 (Tex.Crim.App. 1988).

Respondent determined that he was not required to provide any notice to Relator because the contempt action involves "direct contempt," but Relator has maintained throughout the proceedings below and now in this original proceeding that the contempt action initiated by Respondent involves "constructive contempt." This is a significant issue because the amount of due process afforded to Relator depends on the type of contempt being charged. Disobedience or disrespect of a court which occurs in the presence of a court is known as direct contempt. *In re Reece*, 341 S.W.3d at 365; *Ex parte Chambers*, 898 S.W.2d at 259. In a direct contempt case, the court must have direct knowledge of the behavior constituting contempt. *In re Reece*, 341 S.W.3d at 365, *citing In re Bell*, 894 S.W.2d 119, 127 (Tex.Spec.Ct.Rev. 1995). A trial court in a direct contempt proceeding may conduct a summary proceeding without providing the alleged contemnor with notice and a hearing, but even then, the court's authority is not unlimited. *In re Reece*, 341 S.W.3d at 365 and n.5. Contempt which occurs outside of the court's presence is referred to as constructive contempt. *In re Reece*, 341 S.W.3d at 365. More procedural safeguards are afforded to constructive contemnors, including notice, a hearing to defend or explain the charges, and the opportunity to obtain an attorney. *Id.*

The mandamus record establishes that all of the conduct called into question by Respondent occurred outside of the courtroom while court was not in session or in other parts of the courthouse. Relator did not say or do anything in the courtroom that could be construed as being disrespectful of the court or in violation of an order of the court. The record also establishes that Respondent does not have direct knowledge of the pertinent facts as he gained all of his knowledge about the actions of the three prosecutors by questioning them after-the-fact in the courtroom and by speaking to other people, including his bailiff and one or more deputy sheriffs, after the events took place. Consequently, this case concerns only constructive contempt.

*Civil Contempt v. Criminal Contempt*

Contempt is further classified into either civil or criminal contempt. *In re Reece*, 341 S.W.3d at 365. Civil contempt is remedial and coercive in nature -- the confinement is conditioned on obedience with the court's order. *Id*. Thus, civil contempt is the process by which a court exerts its judicial authority to compel obedience to some order of the court. *In re Krueger*, No. 03-12-00838-CV, 2013 WL 2157765 (Tex.App.--Austin May 16, 2013, orig. proceeding), *citing Ex parte Padron*, 565 S.W.2d 921, 924 (Tex. 1978). Once the contemnor obeys the court order, the contemnor is released from his confinement. *See Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976). In civil contempt, it is often said that the contemnor "carries the keys of his prison in his own pocket" because imprisonment is conditional on obedience with the court's order. *Werblud*, 536 S.W.2d at 545, *quoting Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966).

Criminal contempt is punitive in nature. The sentence is not conditioned upon some promise of future performance; rather, "the contemnor is being punished for some completed act which affronted the dignity and authority of the court." *In re Reece*, 341 S.W.3d at 365.

There are no facts or even allegations in the record which could support a conclusion that this case involves civil contempt. Even though Respondent has not yet entered a contempt order, Respondent's statements on the record establish that he fully intends to find Relator in contempt and impose punishment for some act which Respondent believes violated an order of the court. Under these circumstances, we conclude that the case concerns criminal contempt rather than civil contempt.

*Constitutionally Sufficient Due Process*

Notice in the due process context of criminal contempt proceedings requires two types of notice: timely notice by personal service of the show cause hearing, and full and unambiguous notice of the contempt accusations. *Gonzalez v. State*, 187 S.W.3d 166, 170 (Tex.App.--Waco 2006, no pet.), *citing Ex parte Adell*, 769 S.W.2d 521, 522 (Tex. 1989), *Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988); *In re Rowe*, 113 S.W.3d 749, 752 (Tex.App.--Austin 2003, orig. proceeding.). Notice of the contempt allegations or accusations must state when, how, and by what means the person has been guilty of contempt and must be personally served on the alleged contemnor in a motion for contempt filed by an opposing party, a show cause order issued by the court, or equivalent legal process. *See Ex parte Chambers*, 898 S.W.2d at 262; *Ex parte Vetterick*, 744 S.W.2d at 599. Notice must be in writing and personally served on the contemnor; notice given to the attorney is inadequate. *In re Moreno*, 328 S.W.3d 915, 918 (Tex.App.--Eastland 2010, orig. proceeding), *citing Ex parte Herring*, 438 S.W.2d 801, 803 (Tex. 1969); *Ex parte Vetterick*, 744 S.W.2d at 599 (notice should be by show cause order or

other equivalent legal process personally served on the alleged contemnor); *In re Acceptance Insurance Company*, 33 S.W.3d 443, 449 (Tex.App.--Fort Worth 2000, orig. proceeding). Notice must also be given a reasonable time before the hearing. *Hayes v. Hayes*, 920 S.W.2d 344, 346-47 (Tex.App.--Texarkana 1996, writ denied). A contempt order rendered without adequate notification is void. *Ex parte Adell*, 769 S.W.2d at 522; *Ex parte Blanchard*, 736 S.W.2d 642, 643 (Tex. 1987). Constructive notice of the contempt hearing or contempt allegations is constitutionally inadequate. *See Gonzalez*, 187 S.W.3d at 170-71 (refusing to adopt a rule that constructive notice of a contempt hearing or of contempt charges can be appropriate).

*No Notice of Contempt Allegations*

The mandamus record establishes that Respondent failed to give Warrick, Blancas, or Darnold notice of the contempt allegations. At 11:41 a.m. on August 26, 2013, Respondent sent an email to 34th District Attorney Jaime Esparza, Ruben Nunez, Michael Wyatt, Ballard Shapleigh, Joe Monsivais, and Lily Stroud advising them that since the Eighth Court of Appeals had dismissed the mandamus proceeding the previous business day, August 23, 2013, he intended to conclude the contempt proceedings so that they could "get on with the underlying prosecution." The email notified these attorneys that a contempt hearing was set for the following day at 2:00 p.m. and the presence of the alleged contemnors was "NOT waived." Respondent also entered a written order setting the Flores cause for a contempt proceeding at 2:00 p.m. on August 27, 2013 and stating that, "[t]he presence of the alleged contemnors IS NOT waived." It is undisputed that Flores did not file a motion for contempt and Respondent did not enter a written show cause order giving Warrick, Blancas, and Darnold actual notice of when, how, and by what means each of them had been guilty of contempt. Without such notice, each

of them is left to guess whether Respondent is alleging they violated an oral or written order of the court or they committed contempt in some other manner.

At the contempt hearing on August 27, 2013, and in response to objections and argument by Relator's attorney, Michael Wyatt, to a lack of notice of the hearing and contempt allegations, Respondent provided to Wyatt a document titled "NOTICE OF JULY 10 ACTIONS (SELECTED)." This document contains what appear to be selected fact findings by Respondent about the events which purportedly occurred on July 10, 2013. These fact findings include citations to the reporter's record of the July 10 proceedings, but they also include Respondent's recollection of his conversations with his bailiff and apparently make reference to an affidavit of the bailiff.

The only indication of the conduct found to be objectionable by Respondent is finding #19 which states: "The behavior of ADA Darnold caused his subordinates, ADAs Warrick and Blancas, to disobey the court's directives and orders, to wit: to cease attempts to arrest Flores, and wait until 3 p.m."[5] The document as a whole, and fact finding #19 in particular, do not provide constitutionally adequate notice of the contempt allegations for three reasons. First, the document was not included in a show cause order or some other legal process as required by established principles of contempt law. *See Ex parte Adell*, 769 S.W.2d at 522 (noting that the Court of Criminal Appeals has repeatedly held that full and unambiguous notice of the accusation of contempt must be served on the alleged contemnor and finding that the motion for contempt and show cause order "clearly fail to meet that standard."); *Ex parte Vetterick*, 744

---

[5] This fact finding is contradicted by Respondent's statement on the record in the July 10, 2013 hearing that: "I mean, I had a hearing at 11 o'clock and I told them this is a novel question. Everything you just said, I told them that. And I said -- well, you heard what I read into the record -- I'm putting him in the constructive custody with a peace officer and let's come back here at 3 o'clock and let me know if you're not going to -- if you're taking issue with it, that you're going to have him arrested. I never said don't arrest him because I know. I'm not dumb. Then you wouldn't be here right now. You'd be preparing the mandamus."

S.W.2d at 599 ("In a case involving conduct outside the presence of the court, due process requires that the alleged contemnor receive full and unambiguous notification of the accusation of any contempt. This notice should be by show cause order or equivalent legal process personally served on the alleged contemnor, and it should state when, how and by what means the defendant has been guilty of contempt."). Second, the document was not personally served on Relator prior to the hearing. *See Ex parte Adell*, 769 S.W.2d at 522; *Ex parte Vetterick*, 744 S.W.2d at 599. Third, assuming Respondent intended to allege that Warrick, Blancas, and Darnold violated a court order as indicated in finding #19, the document does not clearly and unambiguously provide notice of the order allegedly violated, it does not indicate whether the order allegedly violated was verbal or written, and it does not set forth the specific conduct of each of the three Assistant District Attorneys which Respondent alleges violated the order. One purpose of requiring notice is to give the alleged contemnor an opportunity to investigate and prepare a defense to the charge. If Respondent intended to allege some other type of contumacious conduct that did not constitute a violation of a court order, the document does not state when, how, and by what means each of them has been guilty of contempt. Instead, Respondent would have Relator sift through the document in order to obtain notice of the contempt allegations. The procedure employed by Respondent falls woefully short of the requirements of due process and amounts to no notice at all.

*Inadequate Notice of the Contempt Hearings*

Respondent gave Warrick, Blancas, and Darnold inadequate notice of the first contempt hearing. At approximately 8:30 a.m. on July 11, 2013, Respondent called the Flores case when Warrick and Blancas arrived in the courtroom. He immediately announced he was going to hold each of them and Darnold in contempt as soon as he could "get Mr. Darnold in here."

Respondent stated he would give them some time "to get your lawyer to prepare any paperwork that you want for what I've told you I'm going to do." After Darnold arrived in the courtroom, Respondent moved the contempt hearing to 2:30 that same afternoon, and he later moved the contempt hearing to the following day at 2:00 p.m. Notice of these settings was provided verbally. Verbal notice of a contempt hearing is inadequate. *Ex parte Vetterick*, 744 S.W.2d at 599.

With respect to the August 27 contempt hearing, Respondent entered a written order setting the contempt proceeding for a hearing and provided it to Wyatt approximately twenty-four hours in advance of the hearing, but he did not provide any notice to Warrick, Blancas, or Darnold. Constructive notice of the contempt hearing is constitutionally inadequate. *See Gonzalez*, 187 S.W.3d at 170-71. The notice provided by Respondent amounted to no notice at all and amplifies the significance of not receiving the constitutionally-required notice of the contempt allegations. We conclude that Relator has met her burden of establishing that Respondent clearly abused his discretion by not affording her the minimum requirements of due process before subjecting her to contempt proceedings and a potential loss of her liberty.

*Inadequate Remedy at Law*

The only remaining issue is whether Relator has an adequate remedy at law. This issue is the focus of Respondent's response. Respondent contends that this mandamus proceeding is premature because a contempt order has not been entered and Relator must wait until he has entered a contempt order, and even then, she has an adequate remedy by means of habeas corpus or mandamus, or by requesting a *de novo* hearing before another judge as provided for by Section 21.002(d) of the Texas Government Code.

An order of contempt is not appealable. *Ex parte Gray*, 649 S.W.2d 640, 642 (Tex.Crim.App. 1983). Contempt orders may be reviewed by an application for writ of habeas corpus, if the contemnor has been confined, or by a petition for writ of mandamus, if the contemnor has not been confined. *See Rosser v. Squier*, 902 S.W.2d 962, 962 (Tex. 1995). An additional statutory remedy is available to an officer of the court who has been held in contempt. Under Section 21.002(d) of the Texas Government Code, an officer of the court who is held in contempt shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a *de novo* determination of his guilt or innocence. TEX.GOV'T CODE ANN. § 21.002(d)(West 2004); *Ex parte Waters*, 499 S.W.2d 309, 310-11 (Tex.Crim.App. 1973). If the officer of the court files a motion pursuant to Section 21.002(d), the judge who held the officer of the court in contempt has a ministerial duty to refer the matter to the presiding judge of the administrative judicial region for assignment to a judge other than the offended court to determine the guilt or innocence of the officer of the court. *See* TEX.GOV'T CODE ANN. § 21.002(d); *Ex parte Waters*, 499 S.W.2d at 310-11; *Ex parte Howell*, 488 S.W.2d 123, 126 (Tex.Crim.App. 1972). The proceeding before the second judge is *de novo.*

Respondent cites *Collins v. Kegans*, 802 S.W.2d 702 (Tex.Crim.App. 1991) in support of his argument that this mandamus proceeding is premature. In *Collins v. Kegans*, the Court of Criminal Appeals refused to grant mandamus relief requested by the TDCJ director, James A. Collins. In the underlying criminal case, the trial court sentenced a female defendant to the boot camp program even though it is restricted to male defendants. *Collins*, 802 S.W.2d at 703-04. Collins sought to have that that portion of the criminal judgment and sentence rescinded in order to protect himself from possible contempt actions against him by the trial judge. *Id.*, 802 S.W.2d at 704. According to the opinion, there were no pending contempt proceedings. *Id.* The Court

of Criminal Appeals declined to grant mandamus relief because Collins had failed to show why habeas corpus would be an inadequate remedy if and when the trial judge pursued contempt proceedings as a means of enforcing her orders. *Id*., at 704-05. The Court cited the rule that "mandamus will not issue during the pendency of contempt proceedings and . . . the validity of a contempt judgment can be attacked 'only by way of habeas corpus.'" *Id*., at 705.

In support of its holding, *Collins* cited the Texas Supreme Court's decision in *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 827 (1960). In that case, the Supreme Court refused to issue a writ of mandamus against a trial court which had threatened a relator with contempt actions. *Deramus*, 333 S.W.2d at 827. The Court noted that it was not a question of jurisdiction to entertain the writ of mandamus, but rather the consideration of long-established policy. *Id.* The relator claimed that habeas corpus was an inadequate remedy because he would suffer the stigma of arrest and confinement. *Id.* The Supreme Court noted that these issues are common to every case where escape is sought from the penalty of a contempt judgment and refused to depart from the rule that it would not issue mandamus relief during the pendency of contempt proceedings. *Id.*

The instant case is readily distinguishable from *Collins* because contempt proceedings are pending in this case and we have determined that Relator has not been provided with constitutionally-adequate notice of the hearing or the allegations of contempt. It is also distinguishable from *Deramus* because Relator is not claiming that habeas corpus or mandamus proceedings are inadequate to address the stigma of arrest and confinement. Relator is asserting that the contempt proceeding itself is constitutionally invalid and should be terminated until she has been afforded due process.

We also note that *Deramus* was decided in 1960. In more recent years, beginning with *In re Prudential Insurance Company of America*, 148 S.W.3d 124 (Tex. 2004), the Texas Supreme Court has retreated from an overly restrictive view of what constitutes an adequate remedy. In that case, the Supreme Court stated:

> The operative word, 'adequate', has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts. These considerations implicate both public and private interests. Mandamus review of incidental, interlocutory rulings by the trial courts unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation. Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.

*In re Prudential*, 148 S.W.3d at 136.

The factual and procedural circumstances of this case are unique in that Respondent has pointedly refused Relator's consistent and repeated requests to be provided with notice of the contempt allegations and of the contempt hearing. Further, Respondent has already announced in open court that he intends to hold Relator in contempt of court and he has apparently prepared fact findings prior to the actual contempt hearing to support that determination. Consequently, if this case is not heard, Relator will in all probability be held in contempt without even a minimum of due process being afforded her. A contempt order or judgment entered when the alleged contemnor has not been afforded due process is void and would be vacated in a subsequent original proceeding. *See Ex parte Adell*, 769 S.W.2d at 522 (granting habeas corpus relief

- 18 -

because alleged contemnor's right to due process was violated where he was not served with motion for contempt, show cause order, or equivalent legal process notifying him of contempt hearing; any oral notification alleged contemnor received was inadequate and notice at prior hearing, on same date as order he allegedly violated, was deficient on its face); *Ex parte Blanchard*, 736 S.W.2d at 643 (discharging alleged contemnor because he was not provided with legal process apprising him of accusations until the contempt hearing). In contrast with *Deramus*, the circumstances and issues presented by this case are not common to every contempt proceeding.

While Relator could challenge a contempt order or judgment by filing a motion pursuant to Section 21.002(d) and obtain a *de novo* hearing before a different judge, we are not persuaded that the remedy is an adequate one. The assigned judge would presumably provide adequate notice of the contempt hearing, but that judge would not be in a position to give Relator adequate notice of the allegations of contempt. It is Respondent's duty, as the offended judge, to provide notice of the contempt allegations or accusations by stating when, how, and by what means Relator has been guilty of contempt. Without notice of the contempt allegations, Relator will be in no better position in a *de novo* contempt hearing before another judge than she is in the contempt proceeding presently pending before Respondent.

This case involves a significant ruling in an exceptional case and it presents us with the opportunity to spare the parties the time and money wasted by improperly-conducted contempt proceedings. Further, we find that mandamus review is required to preserve important constitutional rights from impairment or loss. We fail to see any benefit from allowing the contempt proceedings to continue until Respondent has entered a void contempt order or

judgment. For these reasons, we conclude that the benefits of mandamus review at this juncture far outweigh the detriments.

Having found that Relator has established both parts of the mandamus standard, we conditionally grant mandamus relief and order Respondent to set aside all orders initiating contempt proceedings against Relator, including the written order entered on August 26, 2013 and the "NOTICE OF JULY 10 ACTIONS (SELECTED)." Any future contempt proceedings must comply with the principles and requirements of due process set forth in this opinion. The writ of mandamus will not issue unless Respondent fails to comply within a reasonable period of time.

May 30, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

- 20 -