

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: NOHA M. GOLDRUP, | § | No. 08-24-00311-CV |
| Relator. | § | AN ORIGINAL PROCEEDING |
| | § | IN MANDAMUS |
| | § | |

## MEMORANDUM OPINION

This mandamus arises out of a discovery dispute in a divorce proceeding resulting in an order finding Relator, Noha M. Goldrup (Mother), in contempt. In the Contempt Order, the Honorable Lyda Ness-Garcia, Presiding Judge of the 383rd Judicial District Court, found that Mother was in violation of an Order for Forensic Imaging of Electronic Devices (Forensic Imaging Order) signed on September 8, 2023. The Contempt Order assessed a fine of $500 and commitment for a period of one day in the El Paso County Jail, suspending commitment on the condition that Mother produce the disputed discovery. Mother presents three issues challenging the validity of the Contempt Order, asserting that she received inadequate notice at key procedural stages—including untimely notice of the Forensic Imaging Order, inadequate notice of the conduct alleged in the Motion for Enforcement, and ambiguity in the Forensic Imaging Order's terms—while maintaining across all issues that the record affirmatively establishes her inability to comply. She

asks this Court to find that Judge Ness-Garcia abused her discretion and to vacate the Contempt Order. As explained below, we conclude Mother had adequate notice and we deny the petition for writ of mandamus.

## I. FACTUAL BACKGROUND

During their marriage, Mother and Real Party in Interest, Mark Goldrup (Father), lived in multiple residences domestically and internationally including South Africa, Estonia, Mexico, Washington, DC, Virginia, and El Paso, Texas. Mother filed for a protective order against Father in a Virginia state court on February 3, 2021, and for divorce in the 383rd Judicial District Court in El Paso, Texas on May 7, 2021. The underlying dispute in the trial court concerns audio and video recordings that Mother produced during discovery for the Virginia litigation but has not produced in this litigation.[1]

When Mother failed to produce requested discovery, Father moved to compel production and for sanctions. On July 13, 2023, the trial court held a hearing on Father's motion and announced that it was overruling Mother's objections and granting the motion to compel.[2] At the conclusion of the hearing, Father attempted to clarify the trial court's ruling regarding the timeline for production of devices with recordings. The trial court did not set a date for production, opting instead to give the parties additional time to coordinate with Justiss Rasberry, the expert qualified to perform the data extraction, and to confer on available dates.

---

[1] The record indicates that Mother has produced *some* recordings, but Father alleges that those recordings have been altered. Father is seeking the production of original, unaltered recordings, any subsequent versions or iterations, altered versions (if they exist), and metadata to prove whether recordings were altered or manipulated in any way. We express no opinion on the authenticity or admissibility of any of the recordings.

[2] Father's motion to compel is not included in the mandamus record. The trial court indicated, in the transcript for the July 13, 2023 hearing, that the motion included 49 complaints regarding discovery production. After two hours, the trial court ruled on three of the 49 and suggested to the parties that the rest be resolved on submission.

Three months later, at a hearing on September 7, 2023, Father asked the trial court to enter a proposed order for production, arguing that Mother refused to respond to attempts to confer. After limited argument from both sides, the trial court orally ordered that Mother produce the devices on or before September 14th. The trial court's oral ruling was memorialized in a written order the next day, September 8, 2023. In resolving the dispute over production, the trial court compelled Mother to produce "Devices" containing "Recordings," stating:

> The Court finds and IT IS THEREFORE ORDERED that Grace Rubio, of Rubio Digital Forensics, shall forensically image each and every device of [Mother's] devices that contain Recordings as defined hereinbelow, which include but are not limited to [Mother's] cell phones, cameras, video cameras and other device[s] capable of recording video and/or sound (hereinafter the "Devices"). IT IS THEREFORE ORDERED that [Mother] shall deliver the Devices to Rasberry & Associates . . . on September 14, 2023 at 9:00 a.m. . . .
>
> The forensic imaging to be conducted by Grace Rubio shall be limited to the purpose of the search for, and the extraction of, the following information hereinafter referred to as the "Recordings":
>
> 1. All recordings, whether auditory or visual, taken of [Father] and/or the children since May 7, 2019, including but not limited to the native recordings from the original source of the recordings, and any subsequent iterations of the recordings; and
>
> 2. Any and all metadata related to the native recording and/or subsequent iterations of the recordings, including but not limited to data reflecting the specific make, model, and serial number of the device used for recording and/or storing the original recording and any subsequent iterations of the recording, the software format used for storing the original recording and any subsequent iterations of the recording, and any software used to edit and/or alter the original recording and any subsequent iterations in any manner.

Although the trial court orally ordered production at the hearing on September 7, 2023, and signed the Forensic Imaging Order on September 8, 2023, it was not filed by the District Clerk until September 13, 2023. The e-service certificate shows that Mother's then attorney was electronically served with the Forensic Imaging Order on September 13, 2023. On September 18, 2023, after

3

Mother failed to comply with the Forensic Imaging Order, Father filed his Motion for Enforcement seeking both civil and criminal contempt.

For reasons we cannot discern on the record before us, the Motion for Enforcement was not set for a hearing until July 24, 2024, ten months after the trial court entered the Forensic Imaging Order. At the hearing, Rasberry testified that Mother did not deliver any "Devices" for imaging on September 14, 2023, and instead delivered an affidavit executed September 11, 2023, in which she averred that she no longer had any of the requested "Devices" in her possession. Father testified that he had knowledge that Mother owned multiple "Devices," including a Google Pixel 4 phone, which was backed up to Google Drive, a cloud storage platform, since she initiated the Virginia and Texas litigation. He testified that he confirmed the Pixel 4 was backed up February 9, 2021, and that as he understood Google Drive, unless someone deleted the files from Google Drive, the files would be available on subsequent phones.

Mother asserted the affirmative defense of inability to comply.[3] She initially testified that she was unable to comply because she did not receive a copy of the Forensic Imaging Order until September 18, 2023. The trial court, however, noted on the record that Mother had been present when the Forensic Imaging Order was orally rendered. In response, Mother stated that she did not understand the nature of the oral ruling at the time and had been waiting to receive a written order. Mother further testified that she understood the Forensic Imaging Order to require production of "Devices" containing *original* "Recordings" and claimed she could not comply because she no longer possessed any "Devices" on which the originals were made. Father objected to this testimony, arguing that it conflicted with Mother's prior discovery responses in which she stated

---

[3] Father objected to Mother's inability-to-comply defense on the ground that it was not affirmatively pleaded in a response to the Motion for Enforcement. The trial court overruled the objection.

she could neither admit nor deny whether she was in possession of the "Devices." Mother responded that she had supplemented her discovery responses by submitting a September 11, 2023 affidavit in which she denied possessing any such "Devices." Neither Mother's testimony nor her affidavit, however, identifies when she disposed of or otherwise lost possession of the "Devices." Instead, both merely state that she was not in possession of the "Devices" as of September 11, 2023—the date she executed the affidavit.

Before Mother's testimony concluded, the parties sought to revisit discovery disputes that the trial court had previously resolved. The court promptly ended the discussion, emphasizing its familiarity with the discovery record, reiterating that it had made clear during the July 13, 2023 hearing that Mother would be required to produce the "Devices," and noting that it had presided over multiple hearings culminating in the Forensic Imaging Order that Mother was accused of violating.

At the conclusion of the hearing, the trial court clarified that enforcement of the Forensic Imaging Order was a separate procedural matter focused on compliance. The trial court acknowledged that the parties' broader dispute concerned the admissibility of the recordings and expressly reserved those questions for a later stage of the litigation. The next day, the trial court entered an order finding Mother in contempt as follows:

> **7. _Criminal Contempt_**
>
> IT IS FURTHER ORDERED that punishment for the violation enumerated above is assessed at a fine of $500.00 and confinement in the county jail of El Paso County, Texas, for a period of one (1) day.
>
> IT IS THEREFORE ORDERED that NOHA M. GOLDRUP is committed to the county jail of El Paso County, Texas, for a period of one (1) day for the violation enumerated above.

**8. _Suspension of Commitment_**

IT IS FURTHER ORDERED that commitment is suspended on the following terms and conditions:

IT IS SO ORDERED that NOHA M. GOLDRUP shall deliver each and every device of NOHA M. GOLDRUP's devices that contain Recordings as defined hereinbelow, which include but are not limited to NOHA M. GOLDRUP's cell phones, cameras, video cameras and other device[s] capable of recording video and/or sound . . . for forensic imaging on or before August 9th, 2024 at 4:00 p.m. MST[.]

Mother now seeks mandamus relief arguing that the Contempt Order is void.

## II. MANDAMUS OR HABEAS CORPUS?

As a threshold issue, the parties dispute whether mandamus is an available remedy. Father urges us to dismiss the petition on the ground that a Contempt Order, which includes the possibility of confinement, may only be reviewed by writ of habeas corpus. In support of his position, Father relies on _Deramus v. Thornton_, a case where the Texas Supreme Court previously held "that the validity of a contempt judgment can be attacked only collaterally and that by way of habeas corpus." 333 S.W.2d 824, 827 (1960) (orig. proceeding). However, _Deramus_ expressly acknowledged that mandamus review of contempt orders may be appropriate in certain circumstances. _Id._ at 827 ("We are not to be understood as saying, however, that there may not arise conditions involved in contempt matters where the writ of habeas corpus would not be adequate and where mandamus would be the proper remedy.").

In fact, more recent Texas Supreme Court decisions hold that, because the Court of Criminal Appeals has exclusive original jurisdiction over habeas corpus, mandamus is available to challenge a contempt order that does not involve confinement. _See_ Tex. Const. art. V, § 5; _Dunn v. Street_, 938 S.W.2d 33, 35 (Tex. 1997) (reviewing a show cause order and stating that _Deramus_ was not intended to foreclose mandamus review of contempt orders in all circumstances). Two

years after *Dunn*, the Texas Supreme Court, in *In re Long*, recognized that a writ of mandamus is an appropriate remedy when the contempt order at issue does not involve confinement. 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) ("Contempt orders that do not involve confinement cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of mandamus."); *accord In re Reece*, 341 S.W.3d 360, 369 (Tex. 2011) (orig. proceeding). Conversely, when the contemnor has been confined or released on bond, a contempt order is properly reviewed by an application for writ of habeas corpus. *In re Cisneros*, 487 S.W.3d 237, 241 (Tex. App.—El Paso 2015, orig. proceeding).

Here, the Contempt Order assesses a fine and commitment, suspending the commitment provided that Mother deliver "Devices" ("which include but are not limited to . . . cell phones, cameras, video cameras and other device[s] capable of recording video and/or sound") that contain "Recordings," (i.e., audio or video recordings taken of Father and/or the children since May 7, 2019) as those terms are defined in the Forensic Imaging Order and the Contempt Order. When commitment is assessed but suspended, an order is reviewable by petition for writ of mandamus rather than habeas corpus. *See id.* at 241 (finding mandamus review appropriate when the relator had not yet been taken into custody); *In re Look*, No. 01-02-00959-CV, 2003 WL 876650 at *2 (Tex. App.—Houston [1st Dist.] March 5, 2003, orig. proceeding) (finding habeas relief inappropriate when relator's incarceration was a "speculative possibility," but denying mandamus relief on other grounds). Accordingly, because the Contempt Order suspended commitment, and Mother is not confined, she may seek relief by petition for writ of mandamus.

### III.  STANDARD OF REVIEW

Mandamus is an extraordinary remedy, available only when there has been a clear abuse of discretion by the trial court for which there is no adequate remedy by appeal. *In re Prudential*

7

*Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004). Because contempt orders are not subject to direct appeal, there is no adequate remedy by appeal, and the relator need only establish a clear abuse of discretion. *In re Mittelstead*, 661 S.W.3d 639, 647 (Tex. App.—Houston [14th Dist.] 2023, original proceeding). The trial court abuses its discretion if it reaches a decision that is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze or apply the law correctly. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005). We defer to the trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serc., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

In an original proceeding challenging a contempt order, the relator may discharge this burden by showing that the order is void. *See In re Lowry*, 511 S.W.3d 256, 256 (Tex. App.—Dallas 2015, orig. proceeding) (mem. op.) (citing *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding) (habeas context)). A contempt order is void if it was rendered without adequate notice or if the record presents no evidence of contempt. *In re Wal-Mart Stores, Inc*, 545 S.W.3d 626, 631 (Tex. App.—El Paso 2016, orig. proceeding) (finding inadequate notice); *In re D.L.*, 641 S.W.3d 873, 888 (Tex. App.—Fort Worth 2022, orig. proceeding).

## IV.  CONTEMPT

Contempt is defined as willful "disobedience to or disrespect of a court by acting in opposition to its authority." *In re Luther*, 620 S.W.3d 715, 721 (Tex. 2021) (orig. proceeding) (per curiam); *Ex Parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995) (orig. proceeding). Courts have broad and inherent power to punish contemptuous conduct. *In re Reece*, 341 S.W.3d at 364 (citing *Ex parte Browne*, 543 S.W.2d 82, 86 (Tex. 1976) (orig. proceeding). As another threshold matter, a reviewing court must classify a contempt judgment as either direct or constructive, and as either

8

civil or criminal. *In re Reece*, 341 S.W.3d at 365. The classification is essential because it determines the procedural protections afforded to the alleged contemnor. *In re Gabrielova*, 527 S.W.3d 290, 294 (Tex. App.—El Paso 2016, orig. proceeding) (discussing notice requirements); *In re Johnson*, 150 S.W.3d 267, 271 (Tex. App.—Beaumont 2004, original proceeding) (op. on rhr'g).

Direct contempt occurs in the court's presence and is punishable by immediate action. *In re Reece*, 341 S.W.3d at 365. Constructive contempt, in contrast, occurs outside the court's presence and affords the alleged contemnor due process considerations including notice, opportunity to be heard, and representation by counsel. *In re Wal-Mart Stores, Inc*, 545 S.W.3d at 631. The contempt at issue in this appeal—Mother's alleged failure to comply with the Forensic Imaging Order—is constructive contempt. *See, e.g.*, *Id.* at 631 (classifying failure to comply with a discovery order as constructive contempt).

Whether a contempt judgment is civil or criminal depends on the nature of the punishment. *In re Reece*, 341 S.W.3d at 365. Civil contempt is "remedial and coercive" in nature. *Id.*; *In re Gabrielova*, 527 S.W.3d at 294. It is said that a civil contemnor "carries the keys to the jail cell" because confinement is conditioned upon compliance with the court's order. *In re Reece*, 341 S.W.3d at 365. "Release may be procured or commitment avoided altogether by compliance with the trial court's order." *In re Mittlested*, 661 S.W.3d at 648. Criminal contempt is punitive in nature—it is designed to punish a prior act of disobedience rather than to coerce future compliance. *In re Reece*, 341 S.W.3d at 365. A criminal contempt conviction for violation of a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order. *Ex parte Chambers*, 898 S.W.2d at 259; *In re Braden*, 483 S.W.3d 659, 664 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (per

curiam). A court may issue an order that assesses punishment for both civil and criminal contempt, which is considered a "hybrid" order. *See Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex. 1986) (orig. proceeding) (recognizing that courts can combine both forms of contempt in one order).

The contempt at issue in this appeal is hybrid in nature, as the Contempt Order contains both civil and criminal components. The $500 fine constitutes criminal contempt because it is punitive and unconditional. In contrast, the suspended commitment is coercive and remedial in nature as it is designed to compel Mother's compliance with the Forensic Imaging Order. Mother may purge the civil contempt and avoid confinement if she complies, but she cannot avoid the $500 fine, which remains as punishment for her past conduct. *See, e.g., Ex parte Busby*, 921 S.W.2d 389, 391 (Tex. App.—Austin 1996) (concluding that an order that both allowed a party to avoid confinement by compliance *and* assessed a fine that could not be avoided was a hybrid order). Thus, the Contempt Order before us is a constructive, hybrid order.

## V.  DISCUSSION

Having now classified the Contempt Order, we turn to Mother's arguments. As we understand it, her primary complaint across all three issues, is that she received inadequate notice throughout the contempt process, which we briefly outline below. If Mother indeed received inadequate notice, then the Contempt Order is void, and she is entitled to mandamus relief. *In re Wal-Mart Stores, Inc*, 545 S.W.3d at 631.

First, an alleged contemnor must have knowledge or notice of the underlying order that they are accused of violating, and that order must be enforceable by contempt. A party cannot be held in contempt for violating a court order of which they had no knowledge, as willful disobedience is a necessary element of contempt. *See Ex Parte Chambers*, 898 S.W.2d at 259 ("[O]ne must have knowledge or notice of an order which one is charged with violating before a

10

judgment of contempt will obtain."). To be enforceable by contempt, the language of the order must provide the means of compliance in "clear, specific, and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him . . . ." *In re Janson*, 614 S.W.3d at 727 (quoting *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967 (orig. proceeding)); *see also In re Coppock*, 277 S.W.3d at 418 (orig. proceeding) (requiring an underlying order to "unequivocally command [] that person to perform a duty or obligation"). Thus, adequate notice requires both knowledge of the order and clarity of the language. The underlying order in the present case is the Forensic Imaging Order.

Second, the alleged contemnor is entitled to notice of the contempt allegations against them. In cases involving criminal contempt, a heightened notice standard applies which requires two distinct forms of notice: (1) timely personal service of the show cause hearing, and (2) full and unambiguous notice of the contempt charges.[4] *In re Walmart*, 545 S.W.3d at 631–32 (citing *Gonzalez v. State*, 187 S.W.3d 166, 170 (Tex. App.—Waco 2006, no pet.)). To be full and unambiguous, the notice of the contempt allegations "must state when, how, and by what means the person has been guilty of contempt. *See In re Cisneros*, 487 S.W.3d at 242; *Ex parte Chambers*, 898 S.W.2d at 262. Furthermore, the Texas Family Code requires that a motion for enforcement and any resulting order of confinement must clearly state "the manner of the respondent's noncompliance." Tex. Fam. Code Ann. §§ 157.002(a)(2), 157.166(a)(3). A contempt order entered without personal service of the enforcement hearing, or without full and unambiguous notice of the charges, is void. *See In re Gabrielova*, 527 S.W.3d at 295.

---

[4] Mother's petition does not dispute personal service, only that the allegations in the Motion for Enforcement were ambiguous.

Although we previously concluded that this is a hybrid contempt judgment, given the punitive nature of criminal contempt and the liberty interest at stake, we conclude it is both appropriate and equitable to apply the heightened criminal standard. *See, e.g.*, *Ex parte Chambers*, 898 S.W.2d at 261; *In re Houston*, 92 S.W.3d 870, 876–77 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) (applying the criminal standard to a hybrid contempt proceeding). Finally, the contempt judgment must include specific language providing the contemnor with notice of what actions are required to purge the contempt. *In re Luther*, 620 S.W.3d at 720 n. 13. Mother does not contend that the language in the Contempt Order is insufficient.

Mother complains that the Contempt Order is void because (1) the Motion for Enforcement did not provide full and unambiguous notice of the charges against her; (2) she had no knowledge of the Forensic Imaging Order until after the deadline to comply; and (3) the underlying Forensic Imaging Order lacked specificity to notify her of the means of compliance. We address each of her complaints in turn.

## A.   The language in the Motion for Enforcement

In her first issue, Mother contends that the Motion for Enforcement failed to provide adequate notice of the alleged contemptuous conduct. Notice is sufficient if it informs the alleged contemnor of when, how, and by what means the underlying order was violated. *See In re Cisneros*, 487 S.W.3d at 242. Father's Motion for Enforcement alleged one violation of the Forensic Imaging Order:

> On or about September 14, 2023, [Mother] failed to "deliver the Devices to Rasberry & Associates, 201 East Main, Suite 1616, El Paso, Texas 79901 for forensic imaging on September 14, 2023 at 9:00 a.m." Specifically, [Mother] failed to deliver any Devices to Rasberry & Associates, 201 East Main, Suite 1616, El Paso, Texas 79901 for forensic imaging on September 14, 2023 at 9:00 a.m.

This language is identical to the language used by the trial court in the underlying Forensic Imaging Order.[5] Notably, Mother's petition fails to identify any specific language in the Motion for Enforcement that she contends is vague or ambiguous, as is required for this Court to conclude that the Contempt Order is void.

Thus, to the extent Mother asks this Court to conclude that the Motion for Enforcement provided inadequate notice of the alleged contempt, we disagree. We find the language in the Motion for Enforcement to be both clear and unambiguous, providing Mother with adequate notice of the conduct at issue—namely, her alleged failure to deliver any "Devices" to Rasberry & Associates on September 14, 2023, as required by the Forensic Imaging Order. We overrule Mother's first issue.

## B. Notice of the underlying Forensic Imaging Order

In Mother's second issue, she argues that the Contempt Order is void because she did not receive notice of the Forensic Imaging Order until after the deadline to comply.[6] Although not expressly framed as such, we consider Mother's assertion that she lacked timely notice of the deadline as a challenge to the willfulness element of contempt. Rule 52.3(f) of the Texas Rules of Appellate Procedure requires appellate courts to treat a statement of the issue as encompassing

---

[5] Mother also raises, as her third issue, whether the language of the Forensic Imaging Order is ambiguous such that she was not provided with adequate notice of what was required of her.

[6] Father's responses in this original proceeding urge this Court to deny relief because Mother provided an inaccurate and incomplete record. *See* Tex. R. App. P. 52.7(a). It is clear from a comparison of the certified hearing transcripts and various exhibits included in Mother's petition and supplemental record that Mother's mandamus record contains inaccuracies. However, Mother is only required to provide this Court with a certified or sworn copy of "every document that is material" to her claim for relief. *Id.* (a)(1). We find that the record provided is adequate to resolve Mother's first and second issues regarding notice as it contains file stamped copies of the relevant filings and certified transcripts of the July 13, 2023 hearing on the motion to compel and the July 24, 2024 hearing on the Motion for Enforcement. Mother's record is likely insufficient to resolve her third issue, discussed below, which involves discovery responses considered by the trial court to find her in contempt. Fortunately, Father submitted a supplemental mandamus record containing corrected versions of the exhibits of which he complains as well as certified and sworn copies of Mother's discovery responses. Therefore, we decline to deny the petition on this ground.

"every subsidiary question that is fairly included." Tex. R. App. P. 52.3(f). Willfulness is a subsidiary question inherent in any contempt finding and turns on whether the alleged contemnor knew of the obligation and willfully failed to comply. *Ex parte Chambers*, 898 S.W.2d at 259 ("[O]ne must have knowledge or notice of an order which one is charged with violating before a judgment of contempt will obtain."). Thus, by raising lack of timely notice, the question of whether the Contempt Order is void because Mother did not willfully violate the Forensic Imaging Order is properly before this Court. Tex. R. App. P. 52.3(f).

Although criminal contempt requires proof beyond a reasonable doubt of the willfulness element, in an original proceeding, an appellate court does not reweigh or assess the factual sufficiency the evidence supporting the trial court's contempt finding. *In re Braden*, 483 S.W.3d at 662 (citing *In re Long*, 984 S.W.2d at 626–27). Instead, the reviewing court must determine whether a contempt judgment is void because there is no evidence of contempt. *In re D.L.*, 641 S.W.3d at 888; *accord*, *In re Mayorga*, 538 S.W.3d 174, 178 (Tex. App.—El Paso 2017, orig. proceeding).

Contrary to Mother's contention, the record contains evidence that Mother had knowledge and notice of the Forensic Imaging Order before the deadline to comply. Thus, we cannot say that the Contempt Order is void because her violation was not willful. First, Mother had knowledge that the trial court granted Father's motion to compel by virtue of her presence at the July 13, 2023 hearing on Father's motion to compel, wherein the parties and the trial court explicitly contemplated the production of Mother's "Devices" for forensic analysis of metadata contained within recordings.

Second, Mother attended the September 7, 2023 hearing via Zoom. She was present when the trial court orally ordered her to produce "Devices" to Rasberry & Associates on

14

September 14, 2023—something the trial court noted on the record during the hearing on the Motion to Enforce, which occurred ten months later on July 24, 2024. Third, the Forensic Imaging Order was electronically filed and served on Mother's then-attorney on September 13, 2023, at 4:32 p.m. Thus, the record supports that Mother had imputed knowledge of the requirements through her attorney before the deadline the following morning. *See, e.g.*, *McMahan v. Greenwood*, 108 S.W.3d 467, 480–81 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Knowledge acquired by an attorney during the existence of an attorney-client relationship, and while acting in the scope of his or her authority, is imputed to the client."). Finally, although Mother did not deliver "Devices" on the September 14, 2023 deadline, she did deliver an affidavit swearing that she no longer possessed any "Devices," seriously undermining her argument that she lacked notice or adequate time to respond. Taken together, this evidence in the record tends to support that Mother had notice of the Forensic Imaging Order before the compliance deadline. The trial court, as fact finder, is the sole judge of a witness's credibility, *See, e.g.*, *In re Mancha*, 440 S.W.3d 158, 167 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding). And because we do not reweigh the evidence—only determine whether there is no evidence of contempt—we cannot say that the trial court abused its discretion or that the Contempt Order is void. *In re Mayorga*, 538 S.W.3d at 178. We overrule Mother's second issue.

### C. The language in the underlying Forensic Imaging Order

In her third and final issue, Mother urges us to find that the Contempt Order is void because the language of the Forensic Imaging Order was too vague and ambiguous to support a contempt finding. However, the substance of Mother's argument focuses on her inability-to-comply defense and additionally argues that the trial court improperly relied on her prior discovery responses to

find her in contempt. None of these contentions support the conclusion that the Contempt Order is void.

To be enforceable by contempt, the language of the order must provide the means of compliance in "clear, specific, and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him . . . ." *In re Janson*, 614 S.W.3d at 727 (quoting *Ex parte Slavin*, 412 S.W.2d at 44). The language of the Contempt Order repeats verbatim the language of the Forensic Imaging Order, which we have already concluded is clear and unambiguous in Mother's first issue. Again, as in her first issue, Mother does not identify any language in the Forensic Imaging Order that creates an ambiguity preventing her from understanding the obligations and conditions of her compliance.[7] Therefore, we cannot find the Forensic Imaging Order void on this ground.

Mother's third issue, instead, is more properly construed as a factual challenge to her inability-to-comply defense. Unlike in her second issue, where Mother asserted that lack of notice of the Forensic Imaging Order negated the willfulness element of contempt, here Mother asserts that her lack of possession of any "Devices" negates the willfulness element as she cannot willfully fail to produce something that is no longer in her possession. Again, as this is a factual argument— to hold the Contempt Order void, there must be no evidence of contempt in the record as we cannot reweigh the evidence. *In re Mayorga*, 538 S.W.3d at 178.

---

[7] In her response to Father's reply, Mother states: "It is apparent from [Mother's] petition, however, that her arguments relate to the language of the orders—not to evidentiary questions extraneous thereto." We disagree. As we understand Mother's petition, she does not identify or challenge the language of any of the orders at issue in this original proceeding. Instead, she continually challenges the trial court's consideration of her discovery responses, which is an evidentiary issue that relates to her inability-to-comply defense.

The record before us contains Mother's testimony at the Motion for Enforcement that she no longer possessed "Devices" containing "Recordings." However, it also includes her sworn supplemental answers to interrogatories, signed March 15, 2024, that directly conflict with her testimony.[8] Interrogatory one asks:

> State the time, place, manner of recording, circumstances recorded in each recording, whether auditory or visual, and a description of the device used for such recording, that you have taken of [Father] and/or the children since May 7, 2019, and if the recording has been lost, has been destroyed or is not presently in your possession, custody, or control, describe the recordings, the date of its loss, destruction, purge, or separation from your possession, custody, or control, and the circumstances.

In response, Mother lists 20 recordings. Of those, Mother responds that three recordings were already produced by counsel, one is listed as a duplicate, and 16 are listed as "saved on USB and dropbox." The Forensic Imaging Order required Mother to submit for forensic imaging, "each and every device of [Mother's] devices that contain Recordings as defined hereinbelow, *which include but are not limited to* [Mother's] cell phones, cameras, video cameras and other device[s] capable of recording video and/or sound (hereinafter the "Devices") (emphasis added). As defined, the trial court could reasonably infer from her admission that she retained access to at least two "Devices"—a USB storage device and a dropbox connected computer or account.[9] The trial court determines credibility and may resolve any inconsistencies in the testimony. *In re Mancha*, 440 S.W.3d at 167. Because evidence supports the trial court's finding that "on the day of [the July 24, 2024] hearing, [Mother] had the ability to comply with the prior [Forensic Imaging Order] of the Court[,]" the Contempt Order is not void.

---

[8] As previously stated, Mother did not provide this Court with her discovery responses. However, Father included sworn copies in his supplemental mandamus record.

[9] The Forensic Imaging Order also required mother to provide Rasberry "with any and all passcodes, passwords, or other information necessary to access the "Devices."

As a final matter, Mother suggests, in this issue and across all her issues, that the trial court impermissibly relied on her prior discovery responses as an independent basis for contempt. This assertion is incorrect. Instead, the trial court appropriately considered those responses as relevant evidence in evaluating whether Mother's noncompliance was willful. We overrule Mother's third issue.

## V1. CONCLUSION

For the reasons stated above, we deny Mother's petition for writ of mandamus. Tex. R. App. P. 52.8(a).

MARIA SALAS MENDOZA, Chief Justice

April 16, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.